Lookout Bank *v.* Noe.

LOOKOUT BANK *v.* NOE.

(*Knoxville.* October 4th, 1887.)

1. GENERAL ASSIGNMENT. *What constitutes.*

An assignment intended by its maker to be *general*—as shown by its language and mode of execution—by which a firm transfers its assets, consisting of personalty alone, to an assignee to secure all its creditors *pro rata*, will be treated as a *general* assignment in a litigation involving its validity, when all the parties have so treated it in their pleadings; although it does not on its face so declare itself, and does not in terms purport to convey all the assignor's property.

(See Hays *v.* Covington, 16 Lea, 262; Belding Bros. *v.* Frankland, 8 Lea, 70.)

2. SAME. *Schedule. Oath. Act 1881, ¿ 4, construed.*

Section 4, Chapter 121, Acts 1881, requiring "that the debtor making a general assignment shall annex thereto a full and complete inventory or schedule, *under oath,* of all his property of every description," is mandatory; and strict compliance therewith is essential to the validity of a general assignment.

Cases cited and approved: Hill, Fountain & Co. *v.* Alexander, 16 Lea, 496; Rosenbaum *v.* Moller, 85 Tenn., 653.

3. SAME. *Same. Form of affidavit.*

Where the assignment is, in form and intent, *general,* but neither in its body nor in the annexed schedule of assets purports to embrace all the debtor's property, and the affidavit affixed to the schedule reads, "Subscribed and sworn to before me . . . J. N. G., Cl'k," it is void for want of sufficient verification of the schedule.

Case cited and approved: Hill, Fountain & Co. *v.* Alexander, 16 Lea, 496.

4. SAME. *Same. Affidavit by one of a firm sufficient.*

Any member of a firm may verify the schedule of assets annexed to its general assignment. It is not necessary that all the members join in the affidavit thereto,

5. SAME. *Registration essential as against assignor's creditors.*

Registration of a general assignment is essential to render it effectual against attaching creditors of the assignor; and it must be of the entire and perfected instrument. Creditors are not affected by actual notice of the unregistered assignment.

Code cited : §§ 2837, subsec. 8, 2890 (M. & V.) ; §§ 2030, subsec. 8, 2075 (T. & S.).

Cases cited and approved : Wilson *v.* Eifler, 11 Heis., 188 ; Coward *v.* Culver, 12 Heis., 541 ; Lyle *v.* Longley, 6 Bax., 286 ; Stanley *v.* Nelson, 4 Hum., 484.

6. SAME. *Verification of schedule. Admission in pleadings.*

An incidental allegation, in a bill attacking the general assignment of a firm, that one of the partners made affidavit to the schedule annexed thereto, but not averring the contents of the affidavit, does not estop the complainant to deny the sufficiency of such affidavit, especially where the bill, taken as a whole, vigorously assails the verification of the schedule annexed to the assignment.

---

FROM GRAINGER.

---

Appeal from Chancery Court of Grainger County. JOHN P. SMITH, Ch.

J. T. & J. K. SHIELDS for Complainants.

TAYLOR & HOOD, McFARLAND & DICKSON, COOPER & FRAME, and J. L. ROGERS for Respondents.

CALDWELL, J. This attachment bill was filed by some of the creditors of S. B. Noe & Co., impeaching for fraud in law and fraud in fact a certain deed of assignment, executed by them on the

25th of May, 1885, and seeking to subject the property therein named to the payment of debts against said firm.

The Chancellor heard the cause finally upon voluminous pleadings and proof, and adjudged the assignment to be "fraudulent in law, and null and void," and granted the other relief sought in the bill.

S. B. Noe & Co., their assignee, and numerous creditors, who claim benefits under the assignment, have appealed, and seek a reversal of that decree.

The first contention made before this Court, on behalf of appellants, briefly stated, is: That the Chancellor erred in holding the assignment void for want of compliance with the general assignment law, as embodied in Chapter 121 of the Act of 1881; the assignment being in fact partial, as now insisted, and not general, and for that reason not subject to the requirements of that Act.

The instrument in question does not in terms declare itself to be a general assignment; but, that it was so intended by the makers, is very clear from its language and the manner of its execution.

It purports to assign and transfer to John Essary, Esq., as trustee, or assignee, "a stock of goods, merchandise, hardware, cutlery, shoes and boots, and various articles of produce and merchandise, more particularly described and set out in an inventory herewith filed as part of this assignment, and marked Exhibit No. 1, * * * together

with the debts, notes, accounts, and other claims due said firm, more particularly set out and described in an inventory made part of this assignment, and marked Exhibit No. 2." Then follows a statement that the goods, etc., are at the place of business of the assignors, which is given, and that their debts, etc., grew out of that business.

All their creditors — those named, and those not named, if any — are expressly secured, and by the terms of the instrument are to receive payment *pro rata.* The inventories, referred to in the assignment, are made out in the minutest manner, reciting in their caption that they are parts of the principal paper, and marked as therein stated.

These three papers are severally signed and acknowledged by each member of the firm, and filed for registration, and registered, all on the same day, viz.: May 25th, 1885. On the next day one member of the firm swore, or attempted to swear, to each of the inventories.

Thus it appears unmistakably from the face of these three papers, which are to be taken as one instrument, that the assignors were attempting to make a general assignment, as contemplated by the Act of 1881, Chapter 121, the fourth section of which requires that a sworn inventory of the debtor's property be annexed to every general assignment.

That this requirement was in the minds of the assignors becomes the more manifest when it is remembered that such a thing as a sworn inventory,

in connection with an assignment for the benefit of creditors, was unknown to the law and to the practice in this State prior to the passage of that Act.

Besides this conclusion, drawn from the face of the instrument itself, all parties have committed themselves, by their pleadings, to the theory that it was by the assignors intended to be a general assignment.

Complainants in their bill call it "a paper, purporting to be a general assignment," and attack it because not executed in good faith, and for other reasons. The assignors, answering, "insist that said assignment was made *bona fide*, for the purpose of securing to their *creditors, all alike*, the benefit of *all their assets.*" A large number of the creditors adopt this answer as their own, and several others, answering for themselves, say they "have been informed that S. B. Noe & Co. have made a general assignment, as stated in the bill" — all insisting that it is in substantial, if not in exact, compliance with the provisions of the general assignment act.

It is true, as now contended for him, that the assignee does not in his answer anywhere call the instrument a *general assignment*, and that he refers to it simply as *an assignment;* but it is equally true that he regarded it as a *general assignment*, for in his answer he claimed that all the property of the assignors, whether named in the assignment or not, "passed to this respondent under the provisions of Chapter 121 of the Acts of 1881," etc.

Then it is perfectly manifest from admissions in the pleadings, and from the face of the instrument itself, that it was intended as a general assignment, made in an attempt to comply with the Act of 1881, by which its validity must be tested.

The bill contains no allegation against the form of the assignment itself, but it attacks the verification of the inventories upon several grounds.

The fourth section of the Act provides : "That the debtor making a general assignment shall annex thereto a full and complete inventory, or schedule, *under oath*, of all his property of every description." This provision is mandatory, and faithful compliance therewith is absolutely necessary to the validity of the assignment. *Hill, Fontaine & . Co.* v. *Alexander Bros.*, 16 Lea, 496; *Rosenbaum* v. *Moller*, 85 Tenn. (1 Pickle), 653.

The attempted affidavits in this cause are endorsed upon the inventories in these words :

"Subscribed and sworn to before me, May 26th, 1885, by R. H. Turley.

(Signed.)　　　　　　　"J. N. Goldman, *Clerk.*"

The firm of S. B. Noe & Co., the assignors, was composed of two members, S. B. Noe and R. H. Turley, and, as appears from the endorsement just given, Turley alone swore, or attempted to swear, to the inventories. For this reason it is alleged in the bill and urged in argument that the verification is invalid. The position is, that both Noe and Turley should have sworn to the inven-

tories, and that nothing short of that meets the requirement of the law.

We cannot concur in this view. It is not contended that the statute in terms requires that all the members of a firm making a general assignment shall swear to the inventories annexed; but it is said that this is necessary to a proper assurance that the inventories include all the property of the assignors. This, we think, cannot be so, when all the property conveyed or owned belongs to the copartnership, as seems to be the case here; for the oath of the two partners could not give the instrument any greater verity upon its face than that of one of them affords, the presumption being that they have equal information relative to the firm's assets, and are equally advised of the contents of the inventories. In such case the sanction of the oath of one of them meets the requirement of the law, if sufficient in other regards.

It is next insisted, on behalf of complainants, that the verification of the inventories is not sufficient either in form or substance, being, as already quoted, only this:

"Subscribed and sworn to before me, May 26th, 1885, by R. H. Turley.

(Signed.)　　　　　　"J. N. GOLDMAN, *Clerk*."

This, as well said by counsel, is but the *jurat* of the Clerk — nothing more, nothing less. Yet it is all that appears by way of verification of either of the inventories, the endorsement being the same

upon each of them. This is no affidavit at all. Nothing is signed by the supposed affiant, nor is any fact recited, to the truth of which he was qualified.

It falls far short of the verification contemplated by the statute. The requirement that the inventory or schedule shall be under oath, "addresses itself to the sworn conscience of the debtor, and makes room for punishment for perjury." 16 Lea, 496.

The oath should be that the inventory is full and complete, showing all the property of the debtor; and this should be reduced to writing in the form of an affidavit, and signed by the debtor, or by one of them in a case like that before us.

There might be a case in which a simple affidavit to the truth and correctness of the inventory would be sufficient; but this is not such a case, for two reasons: *First* — The inventories do not recite, in so many words, upon their face that they contain full and complete statements of all the property of the assignors; and, *Secondly* — There is no affidavit that the statements as therein made are true.

Again, the oath taken, whatever it may have been, was administered on the day after the assignment was registered; and from that day until the trial of this cause, in the Court below, there had been no re-acknowledgment or re-registration of the assignment, or any of its parts.

Then, to all intents and purposes, the inventories, as registered, are unsworn, and would on that

account be fatally defective if the verification were endorsed upon them in the most approved form. Such a verification after registration would be entirely immaterial so far as complainants' are concerned, and it matters not that they filed their bill after the effort at verification was made. They assail the instrument as it· appears upon the Register's books, and are affected by nothing else. That which is added after registration. is, in legal contemplation, to be treated as if it had never been done at all, and is of no force or effect as to creditors.

To be effectual against creditors, all mortgages and deeds of trust of either personal or real property must be properly executed and registered, or noted for registration. Code, § 2837, sub-section 8, and Code, § 2890 (M. & V.).

That complainants' had actual knowledge of the attempted verification, before the filing of their bill, can in no wise operate to their prejudice in this cause, it being well settled that attaching creditors are not affected by notice of unregistered instruments. *Wilson* v. *Eifler*, 11 Heis., 188; *Coward* v. *Culver*, 12 Heis., 541; *Lyle* v. *Longley*, 6 Bax., 286; *Stanley* v. *Nelson*, 4 Hum., 484.

The next contention of counsel for appellants is, that though the assignment be properly held to be general in form and intent, the Chancellor was in error in holding it void for want of proper verification, *in the face of an admission in· the bill that the verification was in compliance with the law.*

That part of the bill which it is insisted contains the admission, charges that the assignment was at first executed and filed for registration, " without verifying the inventory of assets;" that Noe, (who knew more about the business and about the assets than his partner, Turley,) though advised " that it was necessary that the inventory should be verified by affidavit, left Rutledge (the town in which the assignment was executed and registered), without doing so, and sent Turley back on the next day *to make the required affidavit, who alone did so,* and the inventory is yet unsworn to by the said Noe."

To our minds this is very far from an admission that the verification was in accordance with the requirements of the statute. At most, the language used can only be held to mean that Turley made the affidavit to the inventory which Noe had been advised was necessary to have made; the form or substance of the affidavit he was advised to make does not appear.

But this is only a detached portion of the bill. When taken altogether the bill not only does not make an admission in favor of the verification, but on the contrary, it vigorously assails the verification for the supposed and real infirmities, which we have already noticed.

The assignment, though intended to be general, must, for reasons stated, be treated as entirely without verification of the inventories filed; and it has been heretofore decided by this Court that " the

failure to such an extent to comply with the law makes the deed fraudulent on its face." 16 Lea, 497.

These questions being conclusive, it is not deemed necessary to decide others raised in the pleadings and urged in argument.

Affirm the decree, at the cost of appellants.