SCHEIBLER *v.* MUNDINGER.

(*Jackson.*  May 29th, 1888.)

1. ASSIGNMENTS, GENERAL.  *Scope of Act of 1881, Ch. 121.*

The Act of 1881, Ch. 121, did not *create*, but only *regulated*, general assignments for the benefit of creditors.  They *existed* before that act.

Case cited: Young *v.* Hail, 6 Lea, 175.

2. SAME.  *What is.*

A· general assignment as defined before, and recognized by, the Act of 1881, Ch. 121, is " an assignment of all a debtor's property for benefit of creditors."

Case cited and approved: Young *v.* Hail, 6 Lea, 175.

3. SAME.  *Same.  Character of instrument ascertained from its face.*

Whether an instrument is, or is to be construed as, a general assignment must be determined *from its face.*  And if, upon its face, it purports to be, or by necessary intendment appears to be, a general assignment, or so declares itself, and conveys all the assignor's property for benefit of his creditors, it will be treated as a general assignment, in passing upon its validity.

Cases cited and approved: Hays *v.* Covington, 16 Lea, 262; Bank *v.* Noe, *ante*, p. 21.

4. SAME.  *Schedule and oath.  Requirement mandatory.*

The requirement of schedule and oath, added, by the Act of 1881, to general assignments for benefit of creditors, is mandatory, and strict compliance therewith is absolutely indispensable to the validity of every instrument which is treated as a general assignment.

Cases cited and approved: Hill *v.* Alexander, 16 Lea, 496; Rosenbaum *v.* Moller, 85 Tenn., 660; Bank *v.* Noe, *ante*, p. 21; Carter Bros. *v.* Collier (oral opinion).

5. SAME.  *Schedule.  Description of property.  General rule.*

Greater particularity is requisite, in the description of the property in the schedule annexed to a general assignment, than in the body of the assignment itself.  The office of the schedule is to aid the more general description in the body of the deed; and thereby furnish such particular, definite, and detailed information of the property conveyed, as will, on the one hand, give adequate knowledge to the

assignee and creditors of their rights, and, on the other hand, guard against the assignor's fraud.

Cases cited: 10 Yer., 146; 5 Hum., 329; 5 Heis., 686; 1 Tenn. Leg. Rep., 59; 1 Cold., 265.

6. SAME. *Same. Insufficient description not remedied by other provisions of Act.*

An insufficient description of the property in the schedule is not aided by that provision of the Act of 1881, Ch. 121, that "the trustee or assignee shall be entitled to any other property of the debtor not embraced in the assignment and not exempt from execution." The purpose of this clause was to prevent the more particular description of the schedule from restricting the general description contained in the body of the deed.

Case cited: Belding Bros. *v.* Frankland, 8 Lea, 70.

7. SAME. *Same. Insufficient description not remedied by offer to give fuller particulars.*

An insufficient description in the schedule is not remedied by an offer made therein to furnish "more full" and complete description of the property "if required."

8. SAME. *Same. Description of "goods."*

Under the case of Rosenbaum *v.* Moller, 85 Tenn., 653, the following description of a stock of goods is sufficient in the schedule annexed to a general assignment, viz.: "All hardware goods in my store, No. 205, Main Street, Taxing District, Shelby County, and fixtures; said hardware goods consisting of shelf hardware, cutlery, and agricultural implements," and referring for "itemized description of said hardware goods" to the assignor's books and invoices in said store, and included in the assignment.

9. SAME. *Same. Description of choses in action.*[*]

A description of the property in the schedule to a general assignment as "all notes and accounts due" the assignor is insufficient, even when supplemented by the statement that "a description of said notes and accounts will be found in my books and invoices in my store, which books and invoices are embraced in my assignment, and to which I refer for a minute and detailed description thereof." The reference should be to the *notes themselves,* and *their place of deposit.* The particular books containing the accounts, and their place of deposit, should be so described as to enable the assignee to find and identify them. "Books and invoices" is too general.

[*] The head-note in Rosenbaum *v.* Moller, 85 Tenn., 653, is not accurate on this point.—REPORTER.

Scheibler *v.* Mundinger.

10. SAME. *Same. Description of moneys.*

"All moneys, whether in my said store or on deposit in any bank in the city of Memphis or elsewhere," is a too general description for a schedule to a general assignment.

11. SAME. *Same. "Household and kitchen furniture."*

A description of a class of property embraced in a schedule to a general assignment, as " my household and kitchen furniture," without more, is insufficient.

12. SAME. *Same. Description of property held under levy of execution.*

Property of the assignor held, at date of assignment, under levy of execution, should be described in the schedule "by a direct and clear reference to the proceedings and the officer's levy."

13. SAME. *Same. Affidavit.*

The signature of the assignor to the schedule of a general assignment, with the Clerk's *jurat* appended, is not a sufficient affidavit where there is no statement in the schedule that it is "full and complete."

14. STATUTES. *Construction. Duty of Court.*

" It is the duty of the Court to enforce the law as it is found upon the statute books; and if it be a good law, its beneficent results will more clearly appear; if it be a bad one, its character will be the sooner manifest, and relief can be craved of that body whose duty it is to make new laws and mend old ones."

---

## FROM SHELBY.

Appeal from Chancery Court of Shelby County. D. H. POSTON, Sp. Ch.

GILLHAM & MILLER and W. W. GOODWIN for Complainant.

TAYLOR & CARROLL, WRIGHT & FOLKES, BEARD & CLAPP, and T. P. EDGINGTON for Respondents.

Scheibler *v.* Mundinger.

*M. M. NEIL, Sp. J. The questions made in this cause arise upon demurrer to complainant's bill.

The bill, in substance, charges that on the 12th day of January, 1886, the defendant, C. Mundinger, then in a failing condition, made to the complainant, Scheibler, a general assignment of all his property for the benefit of all his creditors; that within three months preceding this assignment he suffered his property to be seized under certain collusive attachments, and under executions issued upon judgments by confession, and that these attachments and said judgments were so permitted with the view of giving these favored creditors a preference, and that the preferences so given were in contemplation of the general assignment which he subsequently made.

The assignment is exhibited with the bill, and refers to "Schedule A" as containing a statement of his property. This schedule is in the following words:

"SCHEDULE A.

"1. All hardware goods in my store, No. 205 Main Street, Taxing District, Shelby County, and fixtures; said hardware goods consisting of shelf hardware, cutlery, and agricultural implements.

"2. Also all notes and accounts due me.

"3. And all moneys, whether in my said store or on deposit in any bank in the city of Memphis or elsewhere.

---

* Sitting for Judge Folkes, who was incompetent.—REPORTER.

"An itemized description of said hardware goods, and a description of said notes and accounts, will be found in my books and invoices in said store, which books and invoices are embraced in my assignment, and to which I refer for a minute and detailed description thereof.

" If required I will make this Exhibit A more full.

" I own no other property save that named, except my household and kitchen furniture.

                    " C. MUNDINGER."

" Subscribed and sworn to before me, March 12th, 1886.          HUGH B. CULLEN, *Clerk.*"


The assignee brings the bill to administer the trust under the direction of the Court, to have all preferences declared void, and to secure a *pro rata* distribution among all creditors alike.

The creditors whose preferences are attacked demur, and assign numerous grounds of objection to the bill. We need notice only two. These question the sufficiency of the schedule, and the oath thereto, under Section 4 of Ch. 121, Acts of 1881.

That portion of the section referred to which more immediately concerns the questions now in hand reads: " The debtor making a general assignment shall annex thereto a full and complete inventory or schedule, under oath, of all his property of every description."     *     *     *     *

Other parts of the act provide that preference

Scheibler *v.* Mundinger.

of creditors in general assignments of all a debtor's property for the benefit of creditors shall be illegal; that all general assignments shall operate for the benefit of all the debtor's creditors *pro rata;* that in case a clause giving a preference shall be inserted in such assignment, such clause shall not render the instrument itself invalid, but the clause shall be nugatory, and the *pro rata* rule prevail nothwithstanding; that any mortgage, deed in trust, or other conveyance of a portion of a debtor's property for the benefit of any particular creditor or creditors made within three months preceding a general assignment, and in contemplation of making a general assignment, shall be void in the event such assignment shall be made within three months thereafter, and that the property so conveyed shall be shared ratably by all creditors; that any confession of judgment by a debtor, or permitting judgment to be taken by default, or by collusion, within three months preceding a general assignment, and in contemplation of such assignment, shall be void in event such assignment shall be made within three months after said judgment; and that the assignee shall be entitled to the property or its proceeds "signed to satisfy" such judgments, and likewise to any other property of the debtor not embraced in the assignment and not exempt from execution, but not to interfere with conveyances to secure payment for property bought or money loaned, and executed at the time of borrowing the money or buying the property.

Before this act, general assignments were not unknown in Tennessee. *Young* v. *Hail*, 6 Lea, 175. The Legislature did not intend to introduce any new legal instrument, but simply to regulate an old one. The statute, it will be observed, speaks of it as of a thing already in use, and within its body contains, inferentially, a definition of what is such an assignment, by which it is designated as an "assignment of all a debtor's property for the benefit of creditors." This is substantially the characterization used by this Court in the case of *Young* v. *Hail*, *supra*, decided in 1880 upon an instrument made in 1865. This definition is in strict accord with the most approved precedents. Burrill on Assignments (Ed. 1887), pp. 4, 21–24, 171, and 172.

The instrument, then in common use, which the statute was designed to regulate in practice was one wherein a failing debtor purported to convey all, or substantially all, of his property for the benefit of a creditor or creditors.

Before this statute, general assignments were most usually of the character described in *Young* v. *Hail*, *supra*. Creditors who were more urgent than others, or who had some peculiar claims upon the debtor, either of relationship, friendship, or indulgence, were preferred, and other creditors were left to take such surplus as might remain. Sometimes the beneficiaries under the debtor's trust-deed were divided into first, second, third, fourth, and fifth class creditors, and in some exceptional cases

the scaling was even more minute; and among these several classes the debtor distributed his estate as his conceptions of justice, moral and social obligation, or self-interest it may be, dictated.

Every man has, in general, an inherent right to sell or assign his property, in good faith, so as to prefer one creditor, or other person having a claim upon him, above another; but, by making a general assignment, he may, if he desires, denude himself of this power. But if he choose to make a general assignment, he must conform to the statutory limitations of that instrument. If he choose to make a special assignment, he still has three months in which to change his mind and merge that into a general assignment, if such special assignment was by him made under the particular circumstances named in the statute.

Obviously, then, it becomes a very important matter to determine in a given case what constitutes an attempt to make a general assignment within the Act of 1881. This is to be ascertained from the face of the instrument. If the paper, on its face, purports to be a general assignment (*Hays* v. *Covington*, 16 Lea, 262 and 267), or if it otherwise appear upon its face by necessary intendment to be such (*Lookout Bank* v. *Noe*, 5 S. W. Rep., 433), or if it purports to convey all the debtor's property for the benefit of creditors, then it must be measured by the rules that govern such instruments, and stand or fall accordingly.

In the case we are now considering all doubts

upon this particular question are met by the fact that the instrument upon its face declares that it is intended to be a general assignment, and purports to convey all the debtor's property for the benefit of his creditors.

The provisions which we have but now been considering set forth the effect of a general assignment when truly and legally such, all of which provisions are new, and were grafted upon the law of general assignments as it previously stood in this State.

We now come to consider the new features which the statute has added to the proper execution of the instrument—the schedule and the oath.

Heretofore nothing was needed to effect the due execution of such an instrument except proper conveying words, a general description of the property conveyed, a declaration of trust, signature, acknowledgment, delivery, and registration. This was the instrument which was amended so as to require the additional formalities of a schedule and an oath. Under this, and like instruments prior to the statute of 1881, a very general and meager description would, under all circumstances, suffice, with the qualification that all its imperfections might, in the majority of instances, be cured by parol proof. This is illustrated by a series of cases running through *Galt* v. *Dibbrell*, 10 Yer., 146, 152; *Barker* v. *Wheelip*, 5 Hum., 329; *Overton* v. *Holinshade*, 5 Heis., 686, and culminating in *Atwood* v. *Brown*, 1 Tenn. Leg. Rep., 59; in which

latter case the proposition was announced that "any description which will enable third persons to identify the property, aided by inquiries which the mortgage itself indicates, will be sufficient;" and in that case a description was held quite definite enough which set forth the property conveyed as "seventeen head of horses and three mules, eight wagons complete, six carts and harness complete, eighteen scrapers and attachments," with no indication of place or other means of identification.

This was the state of the law when the Act of 1881 was passed. Can it be doubted that the Legislature intended, if not to eliminate, certainly to supplement this lax rule so far as it was operative upon general assignments? Beyond question, before this act, a conveyance in trust of all the grantor's undivided interest in all the real estate of his father, wherever situated, would have been good. *McGavock* v. *Deery*, 1 Cold., 265. It would still be good so far as the Statute of Frauds affects the question. But would it be good in a general assignment under the Act of 1881? Certainly as to the conveying part of the deed—yes. But would it pass the crucial test of the "inventory or schedule?" Suppose the language should be repeated in the schedule—"all the undivided interest of the undersigned in all the real estate of his father wherever situated"—would that furnish any such information as a schedule is designed to furnish? Why have a schedule if the generality

of description appearing in ordinary deeds will suffice? Does not the fact that a schedule is commanded by the statute point to the conclusion that it was designed to fill a place, and serve an office that the ordinary description did not fill and could not serve? What is that office? Not to convey—that is done by the deed itself—but to furnish such particular, definite, and detailed information of the estate of the maker as will, on the one hand, convey adequate knowledge to the assignee and creditors, and on the other hand, guard against the fraud of the maker himself, to the end that immediately upon such failure the creditors, or the assignee representing them, can know what the property consists of and where it is, and can take immediate charge of it. When a debtor makes a general assignment, by that act he is held to make a full surrender to the law. That surrender must be actual, not colorable. The description of the property, according to its nature, must be so certain by indication of place or character, as that the assignee can, if he will, at once take such charge and possession of it as the law authorizes for the kind or species of property. It will not do to say, "all moneys, whether in my said store or on deposit in any bank in the city of Memphis or elsewhere." Shall the assignee be required first to search the store, and then make demand at the counter of every bank in the city? When this has been done, how shall he explore the comprehensive "elsewhere?"

The room for fraud here is boundless. True the bill charges that Mundinger's property consisted almost exclusively of a stock of hardware in his store-house, No. 205 Main Street, Memphis, and the proceeds of sales therefrom in the hands of or under the control of S. I. McDowell (a receiver appointed by the Chancery Court of Shelby County in the case of *Warner* v. *Mundinger*), and of the fixtures in said store-house, and the choses in action due said Mundinger (all in the hands of said receiver), "also of moneys in the hands of T. B. Edgington and others." But even if the special situation and circumstances of the debtor, not referred to or set forth in the assignment, can have any effect upon the character of the schedule (which is more than doubtful), that would not help this instrument. It is not unlawful to assign property resting under attachment; nor could such assignment preclude a contest of the attachment. Mundinger could have made a sufficient schedule of his money by referring to the moneys in the hands of McDowell, with the special circumstances under which McDowell held it, that would have shown his inability to give the exact amount; he could have shown the amount in the hands of Edgington; and if there were "others" who had his money, their names, at least, could have been given, and if they held the money at his command it would have been his duty to specify the amount so held. Under such a specification as appears in this schedule, the debtor,

after making his general assignment, might appropriate a large part of his assets in defiance of the assignee, and with but little probability of detection. The requirement of a "full and complete inventory or schedule" was made to close just such avenues of fraud.

We are of opinion that the description of the stock of goods in this schedule falls clearly within the authority of *Rosenbaum* v. *Moller*, 1 Pickle, 653, although the estimated value of the stock is not stated.

The choses in action present a more difficult question. In *Rosenbaum* v. *Moller*, *supra*, the schedule contained a list of the persons indebted to the assignor, with a statement of the amount due by each. Here the specification is, "also all notes and accounts due me." This, standing alone, would be clearly bad; but it is followed by the statement: * * "A description of said notes and accounts will be found in my books and invoices in said store, which books and invoices are embraced in my assignment, and to which I refer for a minute and detailed description thereof." Does this reference cure the defects? We are clearly of the opinion that it does not as to the notes. The reference should be to the notes themselves and their place of deposit. We think mercantile accounts may be properly described by reference to particular mercantile books, accompanied with a statement of where the books may be found. We think the designation here—"books

and invoices"—too general. The description of the "books" containing the accounts, and their place of deposit, should be sufficiently definite to enable the assignee, by the exercise of reasonable care, to find them readily by means of the knowledge which the instrument itself conveys.

It is suggested in argument that Mundinger's offer in the schedule—"if required, I will make this Exhibit A more full"—ought to rebut any presumption of fraud arising from its vagueness. We do not concur in this view. If it was within his power to supply fuller information, as the offer indicates, he should have furnished that information before the instrument was filed. The schedule must be complete when it becomes a part of the assignment.

It is urged that Mundinger made as complete a schedule as he was able in view of the pending attachment proceedings. It is by no means true that one cannot make a general assignment because his property is held under adverse proceedings, as in case of the levy of attachment or execution. Such property may be sufficiently described by a direct and clear reference to the proceedings and the officer's levy. No such reference appears in this schedule, nor is any such explanation offered in the bill as excusing the defectiveness of the schedule.

There is one other grave defect in the schedule. It closes with the statement: "I own no other property save that named, except my household

and kitchen furniture." Here is a new class of property not previously mentioned in the schedule; it is not stated as being all, or any part of it, exempt, nor is any information given as to its quantity, character, or value, save such as may be gathered from the comprehensive terms, "household and kitchen furniture." Stated in the schedule as it is, without any claim of exemption, it must be treated as assets intended for creditors, and the description of it is far too general.

From these considerations we are constrained to declare the schedule fatally defective.

The insufficiency of the oath is settled by the principle of *Lookout Bank* v. *Noe*, 2 Pick. (5 S. W. Rep., 434). In that case it is said:

" The oath should be that the inventory is full and complete, showing all the property of the debtor; and this should be reduced to writing in the form of an affidavit, and signed by the debtors, or one of them, in a case like that before us. There might be a case in which a simple affidavit to the truth and correctness of the inventory would be sufficient; but this is not such a case for two reasons: *First*, the inventories do not recite, in so many words, upon their face, that they contain full and complete statements of all the property of the assignors; and, *secondly*, there is no affidavit that the statements therein made are true."

In the case at bar no affidavit is attached to the schedule, nor is the averment in the schedule sufficient to dispense with it. Standing alone, the

Scheibler *v.* Mundinger.

first clause of that averment—"I own no other property save that named"—might well answer as the negative averment of the positive fact required; but. the addition of the second clause—"except my household and kitchen furniture"—shows that he does own other property than that named, and so, being contradictory of the first clause, destroys that clause; and the whole sentence, for the purposes of an affidavit or oath, is reduced to *nil.*

That the simple signature of the assignor to the schedule, with the jurat of the Clerk appended, will not meet the demands of the statute, was distinctly ruled in *Lookout Bank* v. *Noe, supra.*

But it is insisted that all imperfections of the schedule are in every case cured by that clause of Section 4 which reads: "The trustee or assignee shall be entitled to any other property of the debtor not embraced in the assignment and not exempt from execution;" and it is said that, therefore, no harm can come of a defective or meager schedule, because all the debtor's property will go under this clause, whether named or not. This contention overlooks both the true purpose of the schedule, which has been above laid down, and also the true office of this particular clause. It is a recognized rule of construction that where a general clause in an instrument of conveyance is followed by special words in accord therewith, the grant will be limited to the special matter; and it has been repeatedly held under this rule that "a conveyance of all property of every description,

the same being embraced in a schedule annexed," will pass only the property in the schedule. *Belding Bros.* v. *Frankland*, 8 Lea, 70, and cases cited; Burrill on Assignments (Ed. 1887), Secs. 95, 136–138.

It was to avoid the force of this rule that the clause in question was inserted in the statute. The particular kind of instruments which formed the subject of the statute—general assignments of all a debtor's property for the benefit of creditors —in connection with Sections 2 and 3, fully marked out the scope of the legislation. But the danger was that the provisions of Section 4 touching the schedule, standing alone, would, under the rule above quoted, narrow that scope to the terms of the schedule. To prevent this construction, the added words were introduced into the statute. Such we hold to be the true purpose of that clause of Section 4.

But the decisions of sundry States having statutes more or less like our own are pressed upon the attention of the Court in support of the proposition that a defective schedule or oath will not avoid the assignment, and that these requirements are merely directory, and should be construed liberally, and a deficient execution aided in the interest of creditors to secure an equal distribution of the debtor's assets. These views have been presented in able and elaborate arguments, and the Court has examined with care the authorities and reasoning relied upon. These, however, are

not open questions in Tennessee. · In *Hill* v. *Alexander*, 16 Lea, 496, it is said these provisions are "mandatory and absolutely indispensable to the validity, of the deed of assignment;" that the requirement of an oath "addresses itself to the sworn conscience of the debtor, and makes room for punishment for perjury;" that the failure to comply with the requirement "makes the deed fraudulent on its face;" and the instrument in that case was held fraudulent because of the absence of the oath. This was re-affirmed in *Rosenbaum* v. *Moller*, 1 Pick., 660, and again in *Lookout Bank* v. *Noe*, 2 Pick. (5 S. W. Rep., 435). And in the case of *Carter Bros.* v. *Collier*, decided at the present term of the Court, it appeared that a general assignment had been made with schedule and oath, and filed in the Register's office. After this time, and before registration, upon a consultation had between the Register and the Clerk of the County Court, it was determined that the proper place for the schedule was in the office of the Clerk; and hence, without the knowledge of the assignee, or of any other person interested in the instrument, the schedule was detached and filed in the Clerk's office, and the assignment was registered without it. In this state of the matter, an attaching creditor seized the property, alleging that the assignment was invalid for want of the schedule. The Court ruled that the assignment as registered was absolutely void, and rendered a decree in favor of the. attaching creditor.

A strict construction of the act is manifestly proper in view of the far-reaching effect of a general assignment upon particular instruments and acts of a debtor in themselves legal until superseded by this more powerful instrument. By Sections 2 and 3 all deeds of trust and mortgages of a portion of the debtor's property within three months of, and in contemplation of, a general assignment are made void; likewise all confessions of judgment and judgments by default or collusion within like time and in like contemplation.

These are very grave results to be accomplished by the single act of the debtor; and whether it be held that the proposed "contemplation" shall rest wholly within the mind of the debtor and upon his statement or be subject to countervailing and independent proof, and whether it be held that the knowledge and purposes of the debtor alone should be passed upon or that the knowledge and motives of the creditor should be likewise considered, the Court should be sure that it has before it the particular instrument designed by the Legislature.

Furthermore, by the rigid holding that the schedule and affidavit are absolutely essential to the validity of the instrument, such certainty and symmetry are lent to the subject as could not be otherwise gained; and the question of what is and what is not a valid general assignment is placed beyond doubt, and so is removed the distressing uncertainty that has prevailed among the

members of the profession since the passage and promulgation of the act. Concerning what property is conveyed there can rarely, if ever, be any doubt or dispute, such as arose in the case of *Hays* v. *Covington*. The stern requirement that such a schedule and affidavit shall be filed as, in a case of willful and corrupt concealment, will render reasonably probable a conviction of perjury in a prosecution set on foot by persons who shall suffer from the fraudulent concealment of the debtor, will induce a degree of carefulness that, in the practical result, will render such prosecutions unnecessary.

Moreover, the Court, under the guise of a liberal construction, cannot so minimize the plain provisions of a statute as to practically destroy their efficient operation, and so say that the Legislature did not intend that its command should be obeyed; and for a stronger reason this is true, when the requirement is that a particular thing be done, and when this requirement is a new graft upon an old system, and one of the most strongly marked of all the new features introduced. It is the duty of the Court to enforce this law as it is found upon the statute-book, and if it be a good law its beneficent results will more clearly appear; if it be a bad one its character will be the sooner manifest, and relief can be craved of that body whose duty it is to make new laws and to mend old ones.

Nor can any just inference be based, as inti-

mated, upon the fact that it is to the interest of the assignor to make the proposed general assignment invalid or the contrary. Presumably it would be to his interest to take all possible pains to make it valid, otherwise he would not make it at all. Men, in matters of business, usually act within well-known limitations, upon clearly conceived motives of interest. But be this as it may, the whole matter is now committed, as it has ever been in this State, to the inherent power of disposition lodged in the owner of property, and in the absence of any general insolvent law which would give creditors the initiative upon the happening of certain acts indicative of insolvency, matters must be permitted to go as they have heretofore gone; if the debtor complies with the provisions of law in making his deed of trust or assignment, he now, as ever before, gives to his property the direction he desires; if he does not, the diligent and the wise will continue to possess the same power they have always had, and all the Court can do is to observe the contest and decide its issue.

The question already considered being decisive of the case, it is unnecessary to notice others made in the argument and in the briefs of counsel.

The Chancellor sustained the demurrer and dismissed the bill, and his decree is, in all respects, affirmed.

Judge Folkes, having been of counsel, did not participate in the hearing or decision of this case.