In re Wayne G. BUCHANAN, a/k/a
Asbery Buchanan, and Carolyn G.
Buchanan, Debtors.

In re Don A. MORTON, Debtor.

Leon STEINBERG, Trustee and Douglas
Q. Wickham, Trustee, Plaintiffs,

v.

Don MORTON; Michael Max Talley and
wife, Eleanor Jean Talley; William Rog-
er Phillips and wife, Gwendolyn Phillips;
David F. Hill; David T. Hill; Robert N.
Navratil, Trustee, Defendants.

Bankruptcy Nos. 3–82–00037, 3–82–00489.
Adv. No. 3–82–0128.

United States Bankruptcy Court,
E.D. Tennessee.

Dec. 30, 1983.

**850**

Goddard & Gamble, Carl P. McDonald, Maryville, Tenn., for plaintiffs.

Bernstein, Susano, Stair & Cohen, L. Caesar Stair, III, Terri L. Tribble, Knoxville, Tenn., for defendants Hill.

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether the plaintiff trustees may avoid, pursuant to 11 U.S.C.A. § 544 (1979), an unrecorded deed executed by the debtors when the debtors' title to the property involved is likewise derived from an unrecorded deed. Citing Tenn.Code Ann. § 66–5–106 (1982)[1] and § 66–26–103 (1982),[2] the trustees insist they may avoid the debtors' unrecorded deed to defendant David F. Hill. However, defendants Hill maintain that the deed in question, executed in furtherance of a settlement agreement, was merely intended to serve as a release of any claim of the debtors to the property conveyed. Further, defendants Hill maintain that fair consideration was paid by defendant David T. Hill for the purchase of the property and that their interest in the property, under either a re-

sulting or constructive trust, is superior to the trustees'. Also at issue is whether the trustees are entitled to a turnover, 11 U.S.C.A. § 542(a) (1979), by defendants Hill of the unrecorded deed conveying the disputed property to the debtors.

## I

The property at issue is a 1.2-acre tract, site of the former Simple Simon Restaurant, jointly owned by the debtors until September 10, 1979. On that date the 1.2-acre tract (Simple Simon property) and an adjoining 1.6-acre tract were sold by defendant Navratil at his trustee's sale enforcing a second deed of trust. Defendants Talley and Phillips, mortgagees of this second deed of trust, were the successful purchasers on the basis of a nominal bid of $1.00. Although the fair market value of the entire 2.8 acres was approximately $70,000.00 at the time, defendants Talley and Phillips purchased subject to encumbrances (first mortgage and unpaid taxes) exceeding $90,000.00. (The fair market value of the 1.2-acre Simple Simon property was approximately $60,000.00 on the date of foreclosure.) Navratil's trustee deed was delivered to defendant Michael Max Talley on September 13, 1979; however, the deed was not recorded until October 30, 1980. This deed was the last instrument filed for record affecting title to the Simple Simon property when Wayne and Carolyn Buchanan filed their joint chapter 7 petition on January 12, 1982. Debtor Don Morton's petition was subsequently filed on April 7, 1982.

On January 21, 1979, previous to the foreclosure of the second deed of trust by Navratil, the Simple Simon Restaurant was destroyed by fire. Uncertainty existed as to whether the fire loss was insured. An at-

---

1. *Authentication and registration required—Formal ceremonies unnecessary.*—No deed of conveyance for lands, in what manner or form soever drawn shall be good and available in law, as to strangers, unless the same be acknowledged by the vendor, or proved by two (2) witnesses upon oath, in the manner prescribed in chapters 22 and 23 of this title, and registered by the register of the county where the land lies ....

2. *Unregistered instruments void as to creditors and bona fide purchasers.*—Any of said instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.

torney for defendants Talley and Phillips advised them that the probability of recovery from the putative insuror, Travelers Insurance Company, was slim to none.[3] Although the property was subject to three mortgages when the restaurant was destroyed, no mortgagee loss payee was named in the Travelers policy. Travelers commenced, on May 8, 1979, an action in state court seeking a declaratory judgment absolving it from any liability on its policy. After the fire loss both the debtors (third mortgagors) and Charles J. and Judith Talley (second mortgagors) defaulted on their assumption of the first mortgage payments. As the first mortgagors, defendants Talley and Phillips were thus required to make the monthly $1,000.00 first mortgage payments against property owned of record by other parties. Under these circumstances, defendants Talley and Phillips decided to foreclose their second deed of trust during the pendency of the Travelers' declaratory action. On March 5, 1980, nearly six months after Navratil's trustee sale, defendants Talley and Phillips filed a complaint against Travelers seeking judgment for $150,000.00, the amount of insurance against the restaurant building. This action was combined with the previous declaratory action commenced by Travelers. On August 18, 1980, a judgment was entered by the state court finding Travelers liable on its policy insuring the restaurant building for $150,000.00 and its contents for $50,000.00. Insurance proceeds were disbursed pursuant to an order entered October 28, 1980; the first mortgage indebtedness was paid in full; the deficiency on the second deed of trust

note, held by defendants Talley and Phillips, was likewise paid in full. Defendants Talley and Phillips also received reimbursement for both the first mortgage payments made by them between January 1979 and October 1980, and Navratil's attorney fee associated with the foreclosure of the second deed of trust. The debtors and their attorney in Travelers' declaratory action also received $34,817.53.[4]

Realizing that defendants Talley and Phillips owned both the Simple Simon property and the adjoining 1.6-acre tract free and clear of any encumbrances, debtors Wayne Buchanan and Don Morton approached Michael Max Talley about returning the Simple Simon property to them. Buchanan and Morton felt that defendants Talley and Phillips had been overcompensated through the recovery and appropriation of the Travelers insurance proceeds. Michael Max Talley agreed[5] to deed the Simple Simon property back to the debtors, if, and only if, they would make him whole by paying the attorney fees incurred by defendants Talley and Phillips in their suit against Travelers.[6]

Shortly thereafter the debtors and defendant David T. Hill approached Talley with a proposal—Hill would pay $60,000.00 in exchange for the Simple Simon property. On or about October 30, 1980, defendants Talley and Phillips executed their warranty deed conveying the Simple Simon property to the debtors, who in turn conveyed the property by warranty deed to Dave F. Hill, the father of David T. Hill. Michael Max Talley testified that two deeds were em-

---

**3.** A letter binding coverage effective January 18, 1979, was issued only a few days prior to the fire loss. Arson was suspected but never established insofar as it appears from the record herein.

**4.** This amount slightly exceeds the debtors' $33,000.00 cash investment constituting a portion of the consideration for their purchase of the Simple Simon Restaurant and the disputed 1.2-acre tract. (Additional consideration for the purchase was debtors' note for $142,000.00 secured by a third deed of trust against the Simple Simon property.) Although the amount of their attorney fee is not established in the record, Morton testified that he received $15,-

721.44 as his share of these proceeds. The Buchanans presumably received an equal amount since they were Morton's partners.

**5.** According to the deposition testimony of debtor Morton, the debtors threatened to commence a lawsuit against defendants Talley and Phillips if the Simple Simon property was not reconveyed to them. See Ex. 48 at 23–24, introduced at the November 18, 1983, hearing.

**6.** William Phillips testified that Michael Max Talley acted as his agent in discussions with the debtors and that he told Talley that he would be happy if they simply broke even.

ployed to transfer the Simple Simon property because he wanted a "written release" from the debtors of any claim to the property. These two warranty deeds were delivered to David T. Hill in exchange for approximately $60,000.00, appropriated as follows: (1) defendants Talley and Phillips received $22,500.00, representing the amount of their attorney fee in connection with the lawsuit against Travelers; (2) the Buchanans and Morton each received $13,333.00, or a total of $26,666.00; (3) the balance of approximately $11,000.00 was tendered to Charles J. Talley for reasons not entirely clear to the court.[7] Neither of the October 1980 [8] warranty deeds delivered to David T. Hill has ever been recorded.

## II

On February 23, 1982, the Buchanans' trustee commenced an action seeking to avoid Navratil's September 10, 1979, foreclosure sale and his trustee's deed to defendants Talley and Phillips. Although Morton was originally named as a defendant because of an alleged indebtedness to the Buchanans, his trustee in bankruptcy was realigned as a party plaintiff after Morton's chapter 7 petition was filed. Through amendments to the complaint, both David F. Hill (a/k/a Dave F. Hill) and David T. Hill have been joined as defend-

ants. The trustees contend that, in accordance with 11 U.S.C.A. § 542(a) (1979), they are entitled to a turnover by defendants Hill of the October __, 1980, warranty deed to the debtors from defendants Talley and Phillips. Furthermore, the trustees also contend that they may avoid the debtors' unrecorded October __, 1980, deed to Dave F. Hill and recover the Simple Simon property for the benefit of the debtors' estates.

On October 4, 1983, the court sustained the trustee's motion to sever trial of the issues involved in their request to set aside Navratil's September 10, 1979, foreclosure sale and his trustee's deed from the issues pertaining to the October 1980 warranty deeds. Trial of the former issues was held on November 18, 1983. On December 7, 1983, the court's memorandum was entered concluding that 11 U.S.C.A. § 544(b) (1979) does not entitle the trustees to set aside Navratil's foreclosure sale and trustee's deed of September 10, 1979.[9] Hence, defendants Talley and Phillips owned the Simple Simon property when arrangements were made for the purchase of the property by David T. Hill.

## III

■ Commonly known as the "strong-arm clause," Bankruptcy Code § 544(a) [10]

7. Neither Michael Max Talley nor any other witness clearly explained to the court why Charles J. Talley should have received any of the proceeds from Hill. According to Michael Max Talley, this was simply the arrangement among the debtors, David T. Hill, and Charles J. Talley. Perhaps the portion of the Hill proceeds paid to Charles J. Talley represents compensation for the loss of his ownership interest in the 1.6-acre tract, adjoining the Simple Simon property. Charles J. and Judith Talley jointly owned the 1.6-acre tract prior to Navratil's September 10, 1979, trustee's sale. This tract, however, is owned by defendants Talley and Phillips and was not purchased by David T. Hill.

8. The date in October 1980 of the preparation and execution of both deeds is omitted. The acknowledgment date of the deed executed by defendants Talley and Phillips (Ex. 1) is October 31, 1980. The deed from the debtors to Dave F. Hill reflects it was acknowledged on October 30, 1980.

9. More specifically, the court determined that the foreclosure sale and the accompanying trustee's deed are not avoidable under Tenn. Code Ann. § 66-3--101 (1982) (Conveyances in fraud of creditors or purchasers void), because there was no intent on the part of defendants Talley and Phillips to defraud creditors of the debtors through enforcement of their second deed of trust. Additionally, the court found that the successful nominal bid of defendants Talley and Phillips constituted fair consideration for property valued at $20,000.00 less than the encumbrances against it. See Tenn.Code Ann. § 66-3-304 and 305 (1982).

10. The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and

vests a trustee in bankruptcy, as of the commencement of a debtor's case, with the rights and powers under applicable law of a judgment lien creditor of the debtor, an unsatisfied execution creditor of the debtor, and a bona fide purchaser of real property from the debtor.

Although an unregistered deed is effective between the parties thereto and their heirs and representatives, Tenn.Code Ann. § 66–26–101 (1982), it is invalid as to other parties until registered in the county where the property described in the deed is situated. Tenn.Code Ann. § 66–5–106 (1982). Furthermore, Tenn.Code Ann. § 66–26–103 (1982) enacts:

> *Unregistered instruments void as to creditors and bona fide purchasers.*—Any of said instruments [those eligible for registration under Tenn.Code Ann. § 66–24–101 (1982)] not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.

Unregistered instruments eligible for registration are void as to creditors of the maker despite any actual notice of the creditors. *Southern Bank & Trust Co. v. Folsom,* 75 F. 929 (6th Cir.1896); *Lookout Bank v. Noe,* 86 Tenn. 21, 5 S.W. 433 (1887). Hence, it superficially appears that the trustees may avoid the unrecorded October __, 1980, warranty deed from the debtors to Dave F. Hill. However, the court is persuaded that permitting avoidance would work a manifest injustice and create a windfall for the debtors' estates.

Unquestionably, defendants Tally and Phillips owned the Simple Simon property on October 30, 1980. Although under no legal compulsion they acceded to convey their fee interest in the Simple Simon property, valued at $60,000.00, in exchange for $22,500.00 cash and a release of the debtors' claim, if any, to the property. Apparently for the sole purpose of documenting the debtors' release, Michael Max Talley, David T. Hill, Wayne Buchanan, and Don Morton agreed that defendants Talley and Phillips should deed the Simple Simon property to the debtors, who would contemporaneously or coinstantaneously convey the property to Dave F. Hill, the designee of David T. Hill. Their intention could have been accomplished without executing the deed conveying the property to the debtors. What has proved to be an unwise procedure in this case, however, should not be elevated over the substance of the transaction in disregard of the intent. With the exception of Carolyn Buchanan, who signed the deed at the request of her husband, each party to the two October 1980 warranty deeds knew that the purchase money was being paid by David T. Hill, and they all intended for him or his designee to become the owner of the Simple Simon property. Moreover, there was no intention for the Simple Simon property to become property of the debtors. Also, at the time of payment, these parties agreed that all were satisfied with the amount they were receiving. Under the facts in this case Code § 544(a) does not permit avoidance of the debtors' unrecorded deed where their interest is fortuitous and also based upon an unrecorded deed.[11]

with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

    (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

    (3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide pur-

chaser at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C.A. § 544(a) (1979).

**11.** Creditors could not have been misled since record title after October 30, 1980, reflects that defendants Talley and Phillips own the Simple Simon property. Although there was a delay until October 30, 1980, in recordation of Navratil's trustee deed to defendants Talley and Phillips, the first mortgage was not released of record until October 29, 1980. Further, the third mortgage was not released of record until January 7, 1982.

Code § 544(b) permits a trustee in bankruptcy to avoid any transfer of property by the debtor voidable for fraud under applicable state law by a creditor with an allowable unsecured claim against the debtor's estate. Tenn.Code Ann. § 66–3–101 (1982) enacts in part:

> *Conveyances in fraud of creditors or purchasers void.*—Every gift, grant, conveyance of lands ... or chattels ... by writing or otherwise; and every bond, suit, judgment, or execution, had or made and contrived, of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful ... debts ... shall be deemed and taken, only as against the person, his heirs, successors, executors, administrators, and assigns, whose debts ... by such guileful and covinous practices as aforesaid, shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void ....

Clearly, because no intent to delay, hinder, or defraud creditors has been established, the trustees may not avoid the debtors' warranty deed to Dave F. Hill under this statute. The debtors' deed is also not avoidable under Tenn.Code Ann. § 66–3–305 (1982), which recites: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." A "fair consideration" is given when property is exchanged, in good faith, for other property having a fairly equivalent value. Tenn.Code Ann. § 66–3–304 (1982). In exchange for their release of an uncertain or perhaps even valueless claim to the Simple Simon property the debtors received $26,666.00. This sum represents or exceeds a "fair consideration."

Finally, the court also finds that the trustees are not entitled to a turnover of the October ___, 1980, warranty deed to the debtors from defendants Talley and Phillips. Code § 542(a), with exceptions immaterial herein, provides:

> [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Since the Simple Simon property is not property of either of the debtors' respective estates, it may neither be sold by their trustees nor exempted by the debtors. Hence, the deed itself is of inconsequential value or benefit to the debtors' estates and need not be surrendered by defendants Hill.

This Memorandum constitutes findings of fact and conclusions of law required by Bankruptcy Rule 7052.