**Carleen BANDY, Administratrix, Widow, and Next of Kin to Richard L. Bandy, Deceased, Plaintiff-Appellant,**

v.

**Jeffrey A. DUNCAN and Kenneth T. Duncan, Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Nov. 7, 1983.

Permission to Appeal Denied by Supreme Court Jan. 23, 1984.

William B. Vest, Hendersonville, for plaintiff-appellant.

John P. Branham and Steven T. Potts, Howell & Fisher, Nashville, for defendants-appellees.

## OPINION

CONNER, Judge.

This is a case of statutory construction. We are asked to decide if defendant-appellee Kenneth T. Duncan can be held liable pursuant to T.C.A. § 55–7–104(d) for the actions of his son, Jeffrey Duncan, who was involved in a motorcycle-pedestrian collision resulting in the death of Richard L. Bandy, husband of plaintiff-appellant, Car-

leen Bandy.[1] The determinative issue is whether the statute's imputation of negligence to a parent signing the so-called "Teen-Age Affidavit" applies to a minor's operation of a motorcycle even if the minor's driver's license does not contain a motorcycle indorsement.

When Jeffrey Duncan was 16 years old, on July 10, 1978, he applied for and received his driver's license. The application was accompanied by an affidavit, signed by his father, stating that the parent would be financially responsible for any damages caused by Jeffrey's negligence or willful misconduct while operating a "motor vehicle."

On January 19, 1980, Jeffrey was operating a motorcycle despite the fact that his license did not contain a motorcycle indorsement and he did not possess a separate motorcycle license as required by T.C.A. § 55–7–104(a), *infra*, p. 389. The motorcycle collided with Richard Bandy, a Hendersonville police sergeant, resulting in Sgt. Bandy's death. As a result of this tragedy, Jeffrey, then age 17, was convicted of involuntary manslaughter as well as violation of Tennessee's licensing laws.

Plaintiff filed suit seeking compensatory and punitive damages against both Jeffrey and Kenneth Duncan. The claim against the father was based on several different theories of liability, one of which was that the son's negligence was statutorily imputed to the father because he signed the affidavit accepting financial responsibility. A default judgment was taken against Jeffrey Duncan.

Both Mrs. Bandy and Mr. Duncan filed motions for partial summary judgment on the issue of the "Teen-Age Affidavit" theory of liability. It was plaintiff's contention that the statute imputed liability to the father for negligence or willful misconduct of the son while driving *any* motor vehicle, including a motorcycle. The defendant argued that the imputed liability was limited to actions of the son while driving a vehicle covered by the operator's license, and that since Jeffrey was not legally licensed to drive a motorcycle, the affidavit was not applicable.

Circuit Judge Thomas Boyers, III, the original judge hearing the case, granted the motion in favor of the plaintiff. After Judge Boyer's death and following several procedural skirmishes, his son, the newly appointed judge, the Honorable Thomas Boyers, IV, granted a "Motion to Reconsider," reversed the earlier holding and granted partial summary judgment in favor of the defendant. This appeal timely followed.

The plaintiff has framed the determinative question as follows:

Whether T.C.A. § 55–7–104 imputes liability to the parent of a minor for damages arising from the minor's operation of a motorcycle when the parent has signed the minor's application for Tennessee driver's license.

The definition of "motor vehicle," a critical aspect of this case, is contained in T.C.A. § 55–7–102(8). It describes a "motor vehicle" as including *"[e]very vehicle which is self-propelled* and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rail." (Emphasis supplied.) The general requirement that a person must be licensed in Tennessee to operate a motor vehicle is found at T.C.A. § 55–7–104(a):

No person, except those hereinafter expressly exempted, shall drive any motor vehicle upon a highway in this state unless such person has a valid license as an operator or chauffeur under the provisions of this chapter. No person shall operate a motor vehicle as a chauffeur unless he holds a valid chauffeur's license. No person shall operate a motorcycle or a motor driven cycle unless such person has a valid license to operate a motorcycle or a motor driven cycle or has

---

1. Hereinafter the parties will be referred to as in the trial court or by their names, as abbreviated.

an indorsement on a driver or chauffeur license issued by the department authorizing that person to operate a motorcycle or a motor driven cycle; provided, however, that such indorsement is not required on a driver or chauffeur license for the operation of a motorized bicycle.

■ Thus, the statute sets forth a licensing structure with four options: (1) a chauffeur's license, (2) an operator's license, (3) a chauffeur's or operator's license with motorcycle indorsement, and (4) a motorcycle operator's license. In Tennessee a person with the typical operator's license containing no motorcycle indorsement cannot legally drive a motorcycle but is authorized to operate any other "motor vehicle."

For a person under age 18, there are certain other restrictions that are statutorily imposed. T.C.A. § 55–7–104(c) provides:

The application of any person under the age of eighteen (18) years for an instruction permit or operator's license shall be signed and verified before a person authorized to administer oaths by the father, stepfather, mother or guardian, or, in the event there is no parent, step-parent, or guardian, then by another responsible adult who is willing to assume the obligation imposed under this chapter upon a person signing the application of a minor.

The "obligation imposed under this chapter" is found in subsection (d) of the same legislation:

*Any negligence or willful misconduct or violation of any motor vehicle law* of this state or any municipality thereof *by a minor* under the age of eighteen (18) years *when driving a motor vehicle* upon a highway or street *shall be imputed to the person who has signed the application of such minor for a permit or license,* which person shall be jointly and severally liable with such minor for any damages or fines occasioned by such

negligence, willful misconduct, or violation . . . .

T.C.A. § 55–7–104(d) (emphasis supplied).

The "Teen-Age Affidavit" that was signed by Mr. Duncan and properly notarized contains the following language:

I/we the undersigned, make oath in due form of law that I/we are/am the parent of Jeff Duncan whose date of birth is 7–10–62, and that I/we hereby join in the application of said applicant for a Tennessee driver's license. For and in consideration of the issuance of said license by the Tennessee Department of Safety, I/we hereby accept all of the responsibilities and obligations imposed under the provisions of 59–704 [now 55–7–104] Tennessee Code Annotated, upon me/us as the parent/guardian of said applicant who is a person under the age of eighteen (18) years and fully understand and agree that any negligence or willful misconduct of the said applicant while operating a motor vehicle prior to his/her eighteenth (18th) birthday shall be imputed to us/me and that we/I shall be jointly and severally liable with said applicant for any damages caused by his/her negligence or willful misconduct while *operating a motor vehicle.*[2]

/S/ Kenneth T. Duncan

■ The father's argument in seeking to escape responsibility is that by signing the affidavit, "the parent consents only to liability arising out of activity authorized by the license itself and not to liability arising out of activity outside the authorization of the license." We disagree.

The plain language of the statute provides that *"[a]ny* negligence or willful misconduct or violation of *any motor vehicle law"* by a minor *"shall* be imputed" to the person signing the application. It clearly states this such person *"shall* be jointly and severally liable" for such actions of the minor.

■ Likewise, the language of the affidavit is unequivocal. The signatory agrees

---

**2.** The underlined portions of the affidavit were    handwritten.

to accept all the obligations imposed by law and categorically states that *"any* negligence or willful misconduct" of the minor "while operating a *motor vehicle* prior to his/her eighteenth (18th) birthday *shall* be imputed" to the parent or other person signing the affidavit.

■ We recognize Mr. Duncan's concern about the broad language of the statute, but we cannot disregard the plain meaning of the words. When the affidavit accepting financial responsibility has been signed, the statute imputes liability for a minor's violation of "any motor vehicle law," and the legislature has chosen to define "motor vehicle" expansively. One cannot seriously argue that a motorcycle is not a "vehicle which is self-propelled." In addition, the statutory definition of "motor vehicle" as including a motorcycle is consistent with the interpretation of this court. *See Black v. Quinn,* 646 S.W.2d 437 (Tenn.App.1982).

The defendant argues that since a separate type of license is required for a motorcycle the legislature obviously recognized a distinction between motorcycles and all other motor vehicles. Mr. Duncan contends this distinction should be read into the financial responsibility provision. However, it seems equally as plausible to us that the legislature, having acknowledged such a distinction and declining to incorporate it into T.C.A. § 55–7–104(d), recognized the consequences of the language as adopted.

Several rules of statutory construction, all unfavorable to Mr. Duncan, are applicable in this case:

(1) "[U]nambiguous statutes must be construed to mean what they say." *Montgomery v. Hoskins,* 222 Tenn. 45, 47 432 S.W.2d 654, 655 (1968). "If the words of a statute plainly mean one thing they cannot be given another meaning by judicial construction." *Henry v. White,* 194 Tenn. 192, 198, 250 S.W.2d 70, 72 (1952). In the instant case the language is explicit and we find little room for interpretation. In short, the statute means what it says.

(2) "The words of a statute are to be taken in their natural and ordinary sense without forced construction to limit or extend their meaning." *State v. Thomas,* 635 S.W.2d 114, 116 (Tenn.1982). To accept defendant's argument, we would have to conclude that "motor vehicle" in T.C.A. § 55–7–104(d) does not really mean what the legislature said it meant in T.C.A. § 55–7–102(8). One could hardly have a more "forced construction" to limit the meaning of a statute.

(3) "A statute should be construed, if practicable, so that its component parts are consistent and reasonable. Every word used is presumed to have meaning and purpose, and should be given full effect if so doing does not violate the obvious intention of the Legislature." *Marsh v. Henderson,* 221 Tenn. 42, 48, 424 S.W.2d 193, 196 (1968). This principle would seem particularly applicable here where the legislature has defined a critical word, "motor vehicle," and obviously chose to give it a very broad meaning. We see no logic in circumventing this legislative decision by singling out one provision and saying in that particular situation the word has a more limited meaning than given in the specific definitional statute.

(4) The court must construe a statute "as it was written by the Legislature, not as we would write it." *Jackson v. Jackson,* 186 Tenn. 337, 342, 210 S.W.2d 332, 334 (1948). We may concede that the statute places an onerous burden on anyone who signs a "Teen-Age Affidavit"; but that is the burden that the legislature chose to impose, and it is not our place to second-guess its rationale. Our supreme court said it well nearly a century ago:

> It is the duty of the Court to enforce this law as it is found upon the statute-book, and if it be a good law its beneficent results will more clearly appear; if it be a bad one its character will be the sooner manifest, and relief can be craved of that body whose duty it is to make new laws and to mend old ones.

*Scheibler v. Mundinger,* 86 Tenn. 674, 693, 9 S.W. 33, 39 (1888).

■ The defendant's argument is premised at least in part on the contention that

"[t]he statute does *not* impose liability upon a parent whose minor child's *unauthorized* operation of a motor vehicle gives rise to damages." Authorization, of course, is not mentioned in the statute as a prerequisite to imputation of liability, and we find no basis for reading such a requirement into the legislation. The authorization argument was made to the Wisconsin Supreme Court and was rejected in *Employer's Mutual Fire Ins. Co. v. Haucke,* 267 Wis. 72, 64 N.W.2d 426 (1954). In that case, involving a statute similar to the one in Tennessee,[3] the defendant sought to escape imputation of liability because his son was driving a stolen car at the time of the accident. The lower court had declined to apply the plain language of the statute, which imposed liability for *"[a]ny* negligence or willful misconduct of a person under the age of 18 years when operating a *motor vehicle."* This was apparently because the court felt the legislature did not intend for a father to be held liable where the son had been involved in *criminal* activity and conduct not condoned or authorized by the parent. The Wisconsin Supreme Court stated:

> We see no unreasonable, absurd or unjust result in applying to the words of [the statute] their ordinary and accepted meaning. There is no imputation of criminal conduct to the father in holding him liable for his son's negligence when the damage results from that negligence while the son is driving a stolen car. The statute merely imputes to the father the negligence and wilful misconduct of the minor driver. Had the legislature intended that there should be no responsibility because of criminal acts, it could have said that. Not having done so, it seems plain that the negligent acts of the minor must be imputed to the sponsor in claims

arising out of such negligent acts, regardless whether the automobile is stolen or is being operated with consent.

. . . .

> The legislative purpose of the law is plain. What the statute is intended to *do* is protect the public from damage caused by the negligent operation of vehicles by youthful drivers. . . .

. . . .

> It is our opinion that the language of the statute is too clear to admit of any conclusion other than that it means what it says.

64 N.W.2d at 427–28. *See also Swanigan v. State Farm Ins. Co.,* 99 Wis.2d 179, 299 N.W.2d 234 (1980); and *Brown v. Roland,* 40 Cal.App.Supp.2d 825, 104 P.2d 138 (1940).

We recognize that *Haucke* can be distinguished from the instant case in that the driving of a stolen car is illegal because of criminal statutes, not because of state licensing laws, whereas operating a motorcycle is outside the scope of the very license which served as the consideration for signing the minor's application. Nevertheless, we believe there is a common thread in the two situations; it is that the legislature, by choosing broad language, contemplated that minors may act beyond the scope of the state's grant of a license. Therefore, it chose to impute liability to the applicant's indemnitor not only for mere negligence in driving an automobile owned by the parent, but also for intentional misconduct and violation of *"any* motor vehicle law."

The courts in several other states have opted for a strict construction of similar statutes dealing with imputation of liability to adults signing a minor's driver's license application. For example, in *Hartough v. Brent,* 101 Ohio App. 350, 140 N.E.2d 34

**3.** Sec. 85.08(8)(c). "The application of any person under the age of 18 years for an instruction permit or license shall be signed and verified before a person duly authorized to administer oaths, by the father of the applicant if he has the custody of such person * * *."

Sec. 85.08(9)(c). "Any negligence or wilful misconduct of a person under the age of 18 years when operating a motor vehicle upon the

highways shall be imputed to the person who signed the application of such person for a permit or license, which person shall be jointly and severally liable for such operator for any damages cause by such negligence or wilful misconduct."

64 N.W.2d at 426–27, *quoting* the applicable Wisconsin legislation.

(1955), the Ohio Court of Appeals held that the statutory language referring to "any negligence" included contributory negligence. "In determining this question," the court stated, "we are not permitted to assume the General Assembly had any purpose ... other than [that found] in the language of the enactment." 140 N.E.2d at 37. *See also Gracie v. Deming,* 213 So.2d 294 (Fla.Dist.Ct.App.) (marriage of a minor female defendant did not relieve her father of liability); *McCants v. Chenault,* 98 Ohio App. 529, 130 N.E.2d 382 (1954) ("Legislature intended joint and several liability in all its implications ... for all purposes"); *Altimari v. Campbell,* 56 Ohio App.2d 253, 382 N.E.2d 1187 (1978) (liability was statutorily imputed since father failed to deposit proof of financial responsibility even though he did in fact possess an insurance policy that covered the incident in question).

In the final analysis, we simply find no basis to disregard the plain language of T.C.A. § 55–7–104(d). We hold that the original order of the court granting partial summary judgment in favor of the plaintiff was correct.

The plaintiff also challenged the trial court's action in entertaining the defendant's motion to reconsider the original order. In view of our holding on the substantive issue, it is unnecessary to consider this question. (Even if we agreed with the plaintiff on the procedural matter, the only practical significance would be to convert "appellant" to "appellee" since cross-summary judgment motions were before the court.)

Likewise, for the same reason, there is no necessity to discuss plaintiff's third issue—whether the trial court erred in considering an affidavit of Mr. Duncan filed after entry of the original order. The statement in question relates to the subjective intent of the father in signing the application of his minor son and accepting financial responsibility. Our decision is based on the plain language of the statute, settled principles of statutory construction and existing precedent. The father's subjective intent is not relevant to the holding.

Accordingly, the second judgment of the trial court is reversed and this cause is remanded with instructions that the original order granting partial summary judgment in favor of the plaintiff should be reinstated. The costs are taxed against Kenneth T. Duncan.

REVERSED AND REMANDED.

LEWIS and CANTRELL, JJ., concur.