472 So.2d 1338 (1985)
HARTFORD ACCIDENT AND INDEMNITY COMPANY, and Otis Parker, III, Appellants/Cross Appellees,
v.
Dolores B. OCHA, etc., et al., Appellees/Cross Appellants.
No. 84-1179.
District Court of Appeal of Florida, Fourth District.
July 24, 1985.
*1339 Stephen F. Radford, Jr., and Frank G. Cibula, Jr., of Cibula, Gaunt & Pratt, West Palm Beach, for appellants/cross appellees.
Richard A. Kupfer of Cone, Wagner, Nugent, Johnson, Hazouri & Roth, P.A., West Palm Beach, for appellee/cross appellant  Dolores B. Ocha.
*1340 ANSTEAD, Judge.
Otis Parker, III, and his insurance carrier, Hartford Accident & Indemnity Co., appeal a final judgment in favor of the appellee, Dolores Ocha, claiming error in the trial court's denial of their motion for directed verdict as to Parker's statutory liability under section 322.09, Florida Statutes (1979)[1] for his child's misconduct in operating a motor vehicle. Ocha cross appeals claiming error in the exclusion of evidence of the minor's blood alcohol level; in the striking of a punitive damages claim against Otis; and in defense counsel's alleged prejudicial remarks during summation. We find no error in Parker's appeal but reverse for a new trial on the cross appeal.
Dolores, individually and as personal representative of Franklin Ocha, her deceased husband, filed an action for wrongful death after Franklin was killed in an automobile collision with a car driven by Brian Parker, Otis' son. The liability of Brian was admitted at trial. Otis Parker was alleged to be liable by having signed a statutorily required parental consent form which makes a parent responsible for the misconduct of a child while operating a motor vehicle. Although no actual record of the signed form could be located the jury found from other evidence that such a form had been executed and that Otis was accordingly liable. During the trial the court excluded evidence of Brian's blood alcohol level, struck the punitive damages claim against Otis and Hartford, and overruled objections to allegedly prejudicial arguments made by defense counsel. The jury awarded compensatory damages against the defendants in the amount of $60,000 to the estate and $100,000 to Dolores as the surviving widow.
We find no error in the trial court's denial of a directed verdict on the issue of Otis' signing of the statutory form. Jean Mitchell, a drivers' license examiner for the Florida Division of Drivers' Licenses, was the examiner who issued a license to Brian. Otis admittedly was with Brian at the time Brian applied for his license. Otis had his own license renewed at the same time by the same examiner. Mitchell testified that proper identification including proof of age is always required of minor applicants, and a signed parental consent form must accompany an unmarried minor's license application. There were only two occasions she recollected where she neglected to get a written consent form from a minor applicant's parent or guardian, and on both occasions, her office supervisor, caught the mistake and it was corrected before the papers were sent to Tallahassee. C.W. Keith, the state director of the Division of Drivers' Licenses testified that when a minor applies for a driver's license, the Division always secures the signature of a parent or guardian on the consent form before issuing a license. He could not, however, find in the Division records the consent *1341 form signed by Otis Parker. Brian testified that when he went to get his license his father accompanied him because they both knew a parent had to sign for Brian. Otis testified that he did not recall signing any documents concerning Brian's application for a driver's license.
Section 90.406, Florida Statutes (1979), states: "Routine practice.  Evidence of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is admissible to prove that the conduct of the organization on a particular occasion was in conformity with the routine practice." Lumbermens Mutual Casualty Co. v. Alvarez, 443 So.2d 279 (Fla. 3d DCA 1983), stands for the proposition that circumstantial proof by an insurance company of routine office practice of informing applicants that they could not procure a policy containing a deductible if they had no collateral insurance coverage is sufficient to rebut an insured's direct denial that he was so advised, and thereby creates a fact question on the issue. Berwick v. Prudential Property & Casualty Insurance Co., 436 So.2d 239 (Fla. 3d DCA 1983), restates the general rule that mail properly addressed, stamped and mailed was received by the addressee, and that the requirement of showing proper mailing may be satisfied by proof of general office practices. Under the evidence here, and the law set out above, we believe an issue of fact was created as to whether Otis signed the consent form.
On cross appeal, Ocha argues that it was error to exclude evidence of Brian's blood alcohol level, and that a new trial on punitive damages against Brian is required. The appellants do not dispute the fact that the law has changed since the trial of this case, and that under the current law, Brackin v. Boles, 452 So.2d 540 (Fla. 1984), the result of blood alcohol test is admissible in a civil action, regardless of whether the test was made for the purpose of the accident investigation or for a criminal investigation, the distinction relied on at trial for exclusion. The court excluded evidence that Brian had a .13 blood alcohol level[2] just after the accident. The punitive damages claim against Brian was chiefly predicated on Brian's alleged intoxication at the time of the accident. The court instructed the jury that punitive damages required a finding that Brian was "drunk." In closing argument defense counsel argued that Brian had to be found drunk to be punished with punitive damages and that while it was admitted that Brian had some drinks earlier on Christmas morning, "we don't have any absolute piece of paper saying that Brian was or was not drunk." The jury assessed no punitive damages against Brian.
The only argument advanced on appeal as to why a new trial on punitive damages should not be ordered is appellants' claim that the exclusion was harmless *1342 since there was evidence that Brian's drinking was not the cause of the accident. We reject that contention. In Ingram v. Pettit, 340 So.2d 922 (Fla. 1976), the supreme court held that "[t]he voluntary act of driving `while intoxicated' evinces, without more, a sufficiently reckless attitude for a jury to be asked to provide an award of punitive damages if it determines liability exists for compensatory damages." Id. at 924. Under Ingram, the exclusion of the evidence of Brian's blood alcohol level, when considered together with the legal presumption of intoxication, simply cannot be considered harmless error. Such evidence, like the testimony of an eye-witness to an event, has such a direct bearing on the critical issue involved, that it is improbable that its exclusion could ever be considered harmless.
Ocha also contends that if the punitive damages is retried, so must the compensatory damages against all the defendants. However, in Bankers Multiple Line Insurance Co. v. Farish, 464 So.2d 530 (Fla. 1985), the supreme court ordered a new trial on punitive damages only and held that there is no rule of law that punitive damages must bear some reasonable relationship to compensatory damages. We follow that holding here and remand for a trial on punitive damages only.
Ocha also claims that her claim for punitive damages against Otis under section 322.09 was improperly stricken. Ocha relies both on section 322.09 and on Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981). Under Mercury Motors an employer may be held vicariously liable for punitive damages under the doctrine of respondeat superior, if there is proof of egregious conduct on the part of the employee and proof of some fault on the employer's part.
Ocha claims that since section 322.09 provides that "willful misconduct" of the minor should be imputed to the person signing, the parent is equally liable for any punitive damages that could be assessed against the child:
(2) Any negligence or willful misconduct of a minor under the age of 18 years when driving a motor vehicle upon a highway shall be imputed to the person who has signed the application of such minor for a permit or license, which person shall be jointly and severally liable with such minor for any damages caused by such negligence or willful misconduct.
We cannot agree. Notwithstanding the language cited by Ocha, we believe this statute was intended to make a parent liable for actual damages caused by the minor, but not for exemplary damages that are assessed as punishment. Since the statute itself is a limited abrogation of the common law rule that parents are not liable for the torts of their children, we believe the statute should be strictly construed in favor of the parent. Reading the statute in its entirety we believe its purpose is to make an adult, either the parent or guardian, responsible for any damages caused by a minor driver, whether those damages be caused by negligence or willful misconduct. Cf. section 741.24(1), Florida Statutes (1983), providing for parental statutory liability up to $2500.00 for certain damage caused by willful misconduct of minors. In view of the preceding discussion, any reliance on Mercury Motors is misplaced. Accordingly, we find no error.
Finally, Ocha claims that the court improperly allowed defense counsel, during summation, to compare the case being tried to other lawsuits, and prejudicial error resulted by the jury returning a verdict of one-tenth of what her attorney was asking for. The following were the comments in argument and the response by the trial court:
When you talk about damages, you have to be reasonable, based upon the loss and not pull a figure out of the air as Mr. Romano did. He didn't prove they had a loss. That figure was so substantially exaggerated. Any Plaintiff's attorney always asks for at least ten or fifteen times what they want, especially if they don't have any 

*1343 MR. ROMANO: Objection, Your Honor. That is entirely improper argument, talking about what the Plaintiff's lawyer would do in some other case.
THE COURT: Overruled.
Ladies and Gentlemen, attorneys are permitted great latitude in arguing. In ruling on the objection it doesn't mean that I approve or disapprove of the argument. It simply means that he is permitted to make the argument under the latitude allowed in final arguments.
You should examine all the arguments critically and make your own decision as to where the truth of the matter lies.
You may proceed.
While we agree with Ocha that the comment was improper rhetoric, we do not believe it was so highly prejudicial as to require us to overturn the trial court's decision that a new trial was not mandated. Suggesting that all claimants' lawyers always ask for more than they expect to receive or that defense lawyers always say their clients are innocent or that the damages are minor, adds nothing to the orderly resolution of the factual disputes before the jury, and does considerable harm to the already impaired reputation of the legal profession. Counsel are, of course, entitled to point out the lack of factual or legal support for an opposing party's contention, or the lack of reasonableness or rationality in an approach. The trial court should not hesitate, however, to keep tight reins on a lawyer who seeks to win his case by castigating an entire segment of the legal profession. In all likelihood the same lawyer who generally disparages one side, in order to gain a short term advantage, either has already, or will shortly thereafter, occupy the opposite table himself.
Accordingly, we affirm in part, reverse in part, and remand this cause for a new trial on the issue of Brian's liability for punitive damages. We agree that the issue of a parent's liability for punitive damages under section 322.09 is an important one that should be resolved on a statewide basis. Hence, we certify the following as a question of great public importance:
MAY A PARENT BE HELD LIABLE FOR PUNITIVE DAMAGES BASED UPON THE PROVISIONS OF SECTION 322.09, FLORIDA STATUTES?
AFFIRMED in part, REVERSED in part, and REMANDED.
GLICKSTEIN, J., concurs.
WALDEN, J., concurs in part and dissents in part, with opinion.
WALDEN, Judge, concurring in part; dissenting in part:
I concur in all particulars in the well stated majority opinion, with the following single exception.
I respectfully dissent as to the majority holding that Ocha's claim for punitive damages was properly stricken. In my opinion that claim should be reinstated and tried. This view is based on the very language of section 322.09(2), Florida Statutes (1983), and particularly, subsection (2) thereof:
(1)(a) The application of any person under the age of 18 years for an instruction permit or driver's license shall be signed and verified before a person authorized to administer oaths by the father, mother, or guardian or, in the event there is no parent or guardian, by another responsible adult who is willing to assume the obligation imposed under this chapter upon a person signing the application of a minor. This section shall not apply to a person under the age of 18 years who is emancipated by marriage.
... .
(2) Any negligence or willful misconduct of a minor under the age of 18 years when driving a motor vehicle upon a highway shall be imputed to the person who has signed the application of such minor for a permit or license, which person shall be jointly and severally liable with such minor for any damages caused by such negligence or willful misconduct. [Emphasis supplied.]
As reflected, it imputes the "willful misconduct" of the minor to Otis Parker and makes Otis Parker liable for any damages *1344 caused by any of the minor's negligence or "willful misconduct." As I read this statute, it does not limit such recovery to compensatory damages but, to the contrary, it authorizes liability for all damages caused by negligence of any kind (which would have to include simple and gross) and willful misconduct which provision is, in my judgment, surely broad enough to encompass punitive damages. It seems to me that had the legislature intended a restriction to compensatory damages, it would have simply said so and omitted the reference to willful misconduct.
The clause "we believe the statute should be strictly construed in favor of the parent" is noted in the majority opinion. It is suggested that if the language of the statute is clear, unambiguous, and admits of only one meaning (as I think is the case here), the legislature should be held to have intended what it has plainly expressed and there is no need or room for construction. Thus, in my opinion, a construction of this statute by the majority, whether strict, liberal, or otherwise, is inappropriate. See generally 49 Fla.Jur.2d Statutes § 111 (1984).
In my view there is absolutely nothing shocking or distasteful as a matter of public policy, or otherwise, in legislation making the sponsor of a minor motor vehicle operator responsible for all damages negligently caused by such minor, including punitive damages. The protection of the public is a vital goal which should take precedence over the parent or guardian's pocketbook.
It should be supposed that such minor is, or should be, under the supervision and control of his or her sponsor and such sponsor should bear the responsibility of seeing that his or her child or ward is properly educated in auto driving and that he or she properly operates the vehicle. Here, for instance, the minor in question, Brian, had been at fault for causing three prior auto accidents in the 18 month period since he obtained his driver's license before this fourth fatal accident occurred, and he had at least one additional speeding violation, all of which was known to his father, Otis Parker. Moreover, the father knew that Brian had never taken any kind of driver's education course. Here, we may speculate that had there been proper supervision and education, there would have been no wrongful death and no claim for any kind of damages.
Of greatest significance is the fact that, under the statute, it is the voluntary act of the guardian or parent in signing the minor's license application that is the triggering event that puts the minor out upon our highways in operation of a dangerous instrumentality. Such minor driver is predictably less experienced and less able to respond to damage claims when compared to his or her parents or guardian. Again, it is the voluntary act of the sponsor in signing the license application that makes such sponsor liable for damages of all kinds just as though he or she were standing in the shoes of the minor. This voluntary assumption of liability is what distinguishes this situation from the parental liability provided in section 741.24(1), Florida Statutes (1983) and the common law rule upon the subject, both of which were mentioned in the majority opinion.
Finally, if such financial responsibility for compensatory and punitive damages is in anywise repugnant or unacceptable to a given parent or guardian, there is a most simple solution. Don't sign the license application!
Neither party has furnished this court with any controlling authority. While our research has not been exhaustive, the case of Bandy v. Duncan, 665 S.W.2d 387 (Tenn. App. 1983), appears to approve punitive damages under a similar statute. For some insight into the operation and purposes behind the statute see Ruiz v. Ruiz, 427 So.2d 298 (Fla. 3d DCA 1983); Farrier v. Thompson, 234 So.2d 11 (Fla. 4th DCA 1970); and Gracie v. Deming, 213 So.2d 294 (Fla. 2d DCA 1968).
For these reasons I would reinstate Ocha's claim for punitive damages.
NOTES
[1] Section 322.09, Florida Statutes (1979), states:

322.09 Application of minors. 
(1)(a) The application of any person under the age of 18 years for an instruction permit or driver's license shall be signed and verified before a person authorized to administer oaths by the father, mother, or guardian or, in the event there is no parent or guardian, by another responsible adult who is willing to assume the obligation imposed under this chapter upon a person signing the application of a minor. This section shall not apply to a person under the age of 18 years who is emancipated by marriage.
(b) There shall be submitted with each application a certified copy of the birth certificate of the applicant. If the applicant is unable to furnish such certified copy, a certificate from the public school authorities as to the age of the applicant upon entering school as required by s. 232.03, or the school authorities of the state where applicant enrolled in school, shall be submitted. Upon inability of applicant to establish a birth date as provided, then the same may be established in the order of preference as provided by s. 232.03. However, uncertified copies of such documents shall not be accepted.
(2) Any negligence or willful misconduct of a minor under the age of 18 years when driving a motor vehicle upon a highway shall be imputed to the person who has signed the application of such minor for a permit or license, which person shall be jointly and severally liable with such minor for any damages caused by such negligence or willful misconduct.
[2] Section 322.262, Florida Statutes (1979), provides in pertinent part:

322.262 Presumption of intoxication; testing methods. 
(1) It is unlawful and punishable as provided in this chapter and in s. 316.193 for any person who is under the influence of alcoholic beverages, when affected to the extent that his normal faculties are impaired, to drive or be in actual physical control of any motor vehicle within this state.
(2) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving, or in actual physical control of a vehicle while under the influence of alcoholic beverages, when affected to the extent that his normal faculties were impaired, the results of any test administered in accordance with s. 322.261 and this section shall be admissible into evidence when otherwise admissible, and the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of the person's blood or breath shall give rise to the following presumptions:
... .
(c) If there was at that time 0.10 percent or more by weight of alcohol in the person's blood, it shall be prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired. Moreover, such person who has a blood alcohol level of 0.10 percent or above shall be guilty of driving, or being in actual physical control of a motor vehicle, with an unlawful blood alcohol level.