785 So.2d 553 (2001)
Armando DE LA TORRE, M.D., and Armando De La Torre, M.D., P.A., Appellants,
v.
Miguel Angel ORTA, a minor, By and Through his parents, guardians and next of friends, Myriam ORTA and Pablo Orta, and Myriam Orta and Pablo Orta, individually, Appellees.
No. 3D00-385.
District Court of Appeal of Florida, Third District.
March 21, 2001.
Rehearing and Certification Denied May 30, 2001.
*554 Leonardo P. Mendez, Miami, for appellants.
Hillencamp & Alvarez, P.A., Miami; Robert S. Glazier and Sarah Helene Sharp, Miami, for appellees.
Before JORGENSON, COPE and RAMIREZ, JJ.
Rehearing En Banc and Certification Denied May 30, 2001.
COPE, J.
Armando De La Torre and Armando De La Torre, M.D., P.A. (collectively "the doctor" or the "defendant") appeal an order striking their pleadings. We conclude that the striking of the defendant's pleadings was too severe a sanction and reverse the order now under review.

I.
Plaintiffs Pablo and Myriam Orta sued the doctor, claiming medical malpractice in connection with the premature birth of the parties' son, Miguel Angel Orta. In March 1999, prior to filing suit, plaintiffs' lawyers sent the doctor a records request and he did not respond. In April 1999, the plaintiffs sent a notice of intent to initiate a medical malpractice claim, pursuant to section 766.106, Florida Statutes (Supp.1998), to which the doctor also did not respond.
The doctor admitted that he received both notices. He believed he did not have any obligation to respond because the birth and claimed injury occurred in December 1996, more than two years before plaintiffs sent the statutory notices. Since more than two years had elapsed since the birth, the doctor believed that these claims were time-barred as a matter of law. The doctor did not consult with counsel in coming to this conclusion.[1]
The doctor testified that he informally consulted Dr. Armando Tudela, who had actually delivered the child, as well as Dr. Alfredo Rodriguez, a perinatologist, both of whom felt that the plaintiffs' claim had no merit. However, because he felt that the claim was time-barred, the doctor did not respond to either of plaintiffs' notices.
In August 1999, plaintiffs filed their medical malpractice suit. At that point the doctor notified his medical malpractice carrier and obtained counsel. The defense then had the child's chart reviewed by Dr. Donald Willis, a perinatologist affiliated with Dr. Rodriguez. The defense filed the affidavit of Dr. Willis, attesting that he had *555 reviewed the medical records in September 1999, and that in his opinion the doctor had met the relevant standard of care, and that the plaintiffs' claim lacked merit. The doctor also moved for summary judgment on the basis of the statute of limitations.
The plaintiffs moved to determine the reasonableness of the doctor's presuit investigation, and to strike the doctor's pleadings. At the hearing, the parties made proffers of what the evidence would show. The court also received an affidavit from the doctor, the doctor's deposition, and an affidavit by Dr. Tudela. The plaintiffs conceded that the doctor had produced documents in response to a discovery request served with the complaint.
The court struck the doctor's pleadings. The court reasoned that the doctor had failed to respond to the plaintiffs' presuit request for documents and had not provided a response to the presuit notice of intent to sue. The court concluded that the failure to respond had impeded the plaintiffs' investigation of their claims. There was no other finding of prejudice. The court entered partial summary judgment on liability in favor of plaintiffs, and this non-final appeal follows.

II.
We think reversal is required by Kukral v. Mekras, 679 So.2d 278 (Fla.1996).
Plaintiffs correctly point out that the medical malpractice screening statute provides, "Unreasonable failure of any party to comply with this section justifies dismissal of claims or defenses." § 766.106(3)(a), Fla. Stat. (Supp.1998). But the Florida Supreme Court in Kukral held that "the medical malpractice statutory scheme must be interpreted liberally so as not to unduly restrict a Florida citizen's constitutionally guaranteed access to the courts, while at the same time carrying out the legislative policy of screening out frivolous lawsuits and defenses." 679 So.2d at 284.
In Kukral, the plaintiffs failed to conduct a proper presuit investigation and sent out a notice of intent to initiate litigation without any affidavit of an expert. See 679 So.2d at 279. The medical defendants denied the claim. See id. The plaintiffs later provided an expert affidavit and then filed suit.
On motion by the medical defendants, the trial court found that plaintiffs had failed to comply with the medical malpractice screening statute and dismissed the case. This operated as a dismissal with prejudice because the statute of limitations had expired. This court affirmed the dismissal but the Florida Supreme Court reversed.
The Florida Supreme Court explained that the screening statute is intended to weed out frivolous claims and defenses, as well as promote presuit investigation and settlement of claims. Id. at 280, 282-84. In deciding whether plaintiff's complaint should have been dismissed, there were competing considerations. On the one hand, the statute must be enforced; on the other, the litigants' right of access to the courts must be preserved. Id. at 284. The court concluded that Kukral had sufficiently, even though belatedly, complied with the statute and reversed the dismissal order. Id. at 284-85.
In the present case, as in Kukral, the policy of enforcing the statute must be weighed against the right of access to courts. It is well recognized in Florida law that dismissal of claims or defenses is an extreme sanction which should be used sparingly. "[I]f a sanction less severe than dismissal with prejudice appears to be a viable alternative, the trial court should employ such an alternative." *556 Kozel v. Ostendorf, 629 So.2d 817, 818 (Fla.1993).
In this case, a less severe sanction is a viable alternative. While it is true in the present case that the doctor did not respond until after suit had been filed, he did thereafter produce an affidavit of an expert perinatologist stating that he followed the appropriate standard of care in this case. He also moved for summary judgment on the basis of the statute of limitations, which remains a disputed issue in the case.
As the Kukral court explained, one of the purposes of the statute is "screening out frivolous lawsuits and defenses," 679 So.2d at 284, and that goal has been met. There is an expert affidavit corroborating the doctor's defense that he was not negligent, and there is a facially debatable issue regarding the statute of limitations.
For wholly failing to respond to the presuit notices, the court may impose a reasonable fine as a sanction. Because the doctor failed to provide records in response to the plaintiffs' presuit request, he is precluded from enforcing the requirement of written medical corroboration against them. See § 766.204(2), Fla. Stat. (Supp.1998).[2] The trial court said that the failure of the doctor timely to respond had impeded plaintiffs in their investigation of the medical malpractice claim. If the plaintiffs can show that the doctor's noncompliance caused them to incur additional expenses, then the trial court may make a reasonable compensatory award to plaintiffs as a sanction for the doctor's noncompliance.
Striking the doctor's defenses, however, goes too far under the circumstances of this case. See Pagan v. Smith, 705 So.2d 1034 (Fla. 3d DCA 1998); Wainscott v. Rindley, 610 So.2d 649, 650-51 (Fla. 3d DCA 1992). Indeed, the Kukral court itself said in a parenthetical comment that "striking a defendant doctor's defenses for failure to timely respond to presuit discovery requests [was] held too harsh a remedy in [the] absence of prejudice to [the] plaintiff." 679 So.2d at 284 (citation omitted).
The plaintiffs say that if we reverse this order striking the defendant's pleadings, then no defendant will ever comply with the statute. We do not agree. The statute is enforceable by appropriate sanctions. We only say that striking pleadings was excessive under the facts of this case.
Plaintiffs argue that Kukral should be distinguished because in that case, the plaintiffs complied, albeit belatedly, with the screening statute prior to filing suit. They contend that if the compliance comes post-suit, it is too late. We rejected that argument in Pagan. As in Pagan, the question of what sanction to impose depends on the circumstances of the case, including the question of what prejudice has been suffered by the plaintiff. 705 So.2d at 1036.
Plaintiffs argue that affirmance is required by this court's decision in Estevez v. Montero, 662 So.2d 1268 (Fla. 3d DCA 1995). In Estevez, this court upheld the striking of a defendant doctor's pleadings for failure to comply with the screening statute.
We distinguish Estevez for two reasons. First, Estevez was announced a year before Kukral. There is no indication in Estevez that the issue of prejudice (or the *557 lack thereof) was raised by the doctor. The opinion is silent on that issue. In the present case, the doctor did argue that the striking of pleadings is too severe a sanction absent a showing of prejudice, and that argument is entirely correct under the Kukral decision.[3]
Second, in Estevez it does not appear that the defendant doctor ever complied with the statute. There is no indication that he ever filed an expert affidavit to corroborate his medical defense. In the present case, by contrast, the doctor did file such an affidavit and also raised a statute of limitations defense, both of which provide assurance that the doctor in the present case has nonfrivolous defenses to the plaintiffs' claims.

III.
The order under review is reversed and the cause remanded for further proceedings consistent herewith.
NOTES
[1] The plaintiffs contend that they did not discover that there was a basis for a medical malpractice claim until the birth of their subsequent child, and they filed suit within two years of that date. The statute of limitations issue is not before us on this appeal.
[2] The doctor concedes, and we agree, that plaintiffs may obtain the benefit of subsection 766.204(2) simply by showing that defendant failed to produce duly requested documents. To invoke this part of the statute, plaintiffs need not make any showing that they were prejudiced by the nonproduction.
[3] See footnote 2. The doctor acknowledged that no showing of prejudice is required where the plaintiff seeks the remedy of subsection 766.204(2), Florida Statutes, but argued that a showing of prejudice is required where the plaintiff seeks to strike the doctor's pleadings.