877 So.2d 755 (2004)
Ronda McPHERSON and John McPherson, her husband, Appellants,
v.
Leigh PHILLIPS, M.D., Appellee.
No. 4D03-1332.
District Court of Appeal of Florida, Fourth District.
June 9, 2004.
*756 Louis Thaler of Louis Thaler, P.A., Coral Gables, for appellants.
Shelley H. Leinicke of Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., Fort Lauderdale, for appellee.

ON MOTION FOR REHEARING
GROSS, J.
Ronda and John McPherson have moved for rehearing pursuant to Florida Rule of Appellate Procedure 9.330(a). Although we deny the motion for rehearing, we withdraw our per curiam affirmance and substitute the following opinion.
The McPhersons appeal a final judgment entered after a defense verdict in a medical malpractice action. We address three issues in this opinion: (1) the trial court's rulings under section 766.106, Florida Statutes (2002); (2) whether the trial court erred in denying the McPhersons' motions for mistrial and for new trial due to an improper closing argument; and (3) whether the trial court erred in granting the defense motion to tax costs, which was filed three months after the final judgment.

Chapter 766 Issues
On December 23, 1996, the McPhersons' lawyer served appellee Dr. Leigh Phillips with a notice of intent letter containing a corroborating verified opinion of a medical expert. The expert, Dr. William L. Bacon, opined that:
Dr. Phillips failed to order appropriate test(s) and failed to make the diagnosis of osteomyelitis. Dr. Phillips also failed to order appropriate treatment and failed to monitor the patient's condition. The failure to make the diagnosis of osteomyelitis in a timely manner was the direct cause of the amputation of the distal phalanx of the right index finger and permanent injury to Ronda McPherson.
The letter asked that Dr. Phillips provide certain information, such as copies of his *757 records regarding the care and treatment of Ronda, the names and addresses of persons involved in Ronda's care, and a transcription of any hospital or office notes.
Dr. Phillips did not respond to the notice of intent letter. On February 12, 1997, the McPhersons' counsel sent a second letter to Dr. Phillips noting that he had not responded to the previous letter. The letter requested a response. Dr. Phillips did not respond to the second letter.
Between February 12 and March 24, 1997, the McPhersons sent copies of other letters to Dr. Phillips which involved communications between the McPhersons and other potential defendants in the case.
On May 12, 1997, the McPhersons filed a complaint for medical malpractice against Dr. Phillips, along with two other defendants.
On September 11, 1997, Dr. Phillips filed his answer. On September 17, 1997, the McPhersons moved to strike Dr. Phillips's pleadings, based on his failure "to comply with the presuit screening requirements of Florida Statute Chapter 766."
The trial court held a hearing on the motion to strike on November 21, 1997. Dr. Phillips appeared as a witness. He acknowledged that his address matched the address used in all correspondence sent by the McPhersons. He admitted that people who worked in his office had apparently signed for the correspondence sent by the McPhersons.
While not disputing that his office had received all of the plaintiffs' letters, Dr. Phillips denied seeing any of the correspondence until three days before the hearing, at his deposition. Dr. Phillips searched his office and could not locate any of the letters and records sent by the McPhersons.
An affidavit presented to the court represented that a woman who worked at the doctor's office believed that the doctor's medical malpractice liability insurer had received copies of all of the documents sent by the plaintiffs. The only document which the woman recalled receiving was the notice of intent, but she understood that the insurer had already received this letter from plaintiffs' counsel. The inference is that the office staff believed that the insurance carrier was handling the matter.
After the lawsuit was filed, the insurer wrote to the McPhersons' lawyer explaining there had been miscommunication, and asking to "engage in presuit." The plaintiffs' counsel responded that he had no desire or intention to engage in presuit, since he believed the trial court "will probably strike your pleadings."
The trial court heard the argument of the attorneys. Dr. Phillips's lawyer told the trial court that the intent of Chapter 766 was "not to play gamesmanship" and that the McPhersons' motion to strike the pleadings was tantamount to "gotcha" litigation tactics. He argued that there had been no unreasonable failure to respond because Dr. Phillips had never seen the documents and the individuals who received them were employed by a separate corporation that was not a defendant in the case.
Plaintiffs' counsel explained that he had not gone through presuit, in response to the insurer's belated request, because "first of all, there was no obligation to do it and second, we didn't want to delay the plaintiffs' case and, third, we had already gone through it ... with co-defendants...."
Without articulating its reasons, the trial court denied the McPhersons' motion to strike. In reviewing the trial court's ruling, we are required to view the evidence *758 taken at the hearing in the light most favorable to upholding the ruling. See Smith Barney, Inc. v. Potter, 725 So.2d 1223, 1224 (Fla. 4th DCA 1999) ("The hoariest principle of appellate review is that every presumption is in favor of the ruling of the trial court.").
The McPhersons argue that because Dr. Phillips failed to comply with the presuit screening requirements of Chapter 766, "the only appropriate sanction" was to strike his pleadings. However, the law does not support such an automatic, draconian response to every Chapter 766 noncompliance.
Section 766.106, Florida Statutes (2002) provides the statutory framework for the presuit process in medical malpractice cases. After completing the presuit investigation, but before filing suit, a claimant must notify each prospective defendant, by certified mail, return receipt requested, of the intent to initiate medical malpractice litigation. See § 766.106(2)(a). No suit may be filed for a period of ninety days; during this period, the prospective defendant's insurer "shall conduct a review ... to determine the liability of the defendant." § 766.106(3)(a). No such review was conducted here.
At or before the end of the ninety days, the insurer "shall provide the claimant with a response," either rejecting the claim, making a settlement offer, or making an offer of admission of liability and for arbitration on the issue of damages. § 766.106(3)(b)1.-3. Dr. Phillips did not comply with this statute.
Likewise, Dr. Phillips did not comply with the portion of the statute which states that, "[u]pon receipt by a prospective defendant of a notice of claim, the parties shall make discoverable information available without formal discovery. Failure to do so is grounds for dismissal of claims or defenses ultimately asserted." § 766.106(6)(a).
Despite Dr. Phillips's failure to comply with the statutory requirements, the trial court was within its discretion in denying the motion to strike his pleadings. It is well-settled that striking a defendant's pleadings or affirmative defenses for failing to comply with Chapter 766 presuit requirements is an extraordinary sanction justified only in extreme situations.
The language of the statute demonstrates the discretion and flexibility accorded to a trial judge in fashioning a remedy for failing to comply with Chapter 766. While section 766.106(3) imposes mandatory obligations upon a defendant, it also states that, "[u]nreasonable failure of any party to comply with this section justifies dismissal of claims or defenses." § 766.106(3)(a)4. (emphasis added).
The italicized words make it clear that a trial court must evaluate each case on its facts. The word "unreasonable" indicates that not all failures to comply will result in dismissal; the word "justifies" means that an "unreasonable failure" to comply with Chapter 766 will support a judge's decision to dismiss, not that dismissal is required in every case. "Failure to comply may be reasonable or, even if unreasonable, may not justify the ultimate sanction of dismissal." Wainscott v. Rindley, 610 So.2d 649, 650-51 (Fla. 3d DCA 1992).[1]
*759 The McPhersons cite to Estevez v. Montero, 662 So.2d 1268 (Fla. 3d DCA 1995), where the third district affirmed the trial court's decision to strike the defendants' pleadings for failing to respond to the plaintiff's presuit notice of intent. That case demonstrates only that a trial court has the discretion to strike pleadings, not that the court abuses its discretion in failing to do so.
In Estevez, the defendant doctor received the notice of presuit and decided to conduct his own investigation, without following the statutory requirements. The trial court concluded that the doctor "had not made a good faith rejection of the malpractice claim against him." Id. at 1269. For example, the doctor did not forward the notice of intent to his attorney, spoke with other doctors involved in the suit, consulted with an expert hired by another defendant, concluded that he had committed no wrongdoing, and took no further action required by statute. Id. This knowledge of the presuit documents and disregard for Chapter 766 requirements is quite different from this case, where the trial court accepted Dr. Phillips's explanation that he had never seen any of the correspondence sent by the McPhersons' counsel.
De La Torre v. Orta, 785 So.2d 553 (Fla. 3d DCA 2001), demonstrates that dismissal is a harsh sanction for noncompliance with presuit requirements that should be sparingly granted. In that case, prior to filing suit, plaintiffs' counsel sent a notice of intent and a records request to the defendant doctor. The doctor did not respond. He admitted receiving both notices, but believed he had no obligation to reply because the claims were time-barred by the statute of limitations.
After a lawsuit was filed, the doctor notified his malpractice carrier, obtained counsel, filed an affidavit of a second doctor who opined that the doctor had met the relevant standard of care, and moved for summary judgment. The trial court granted the plaintiffs' motion to strike the doctor's pleadings, reasoning that the doctor had failed to respond to the request for documents and notice of intent to sue, and the plaintiffs had suffered prejudice by having their investigation impeded by the failure to respond.
The third district held that the trial court erred in striking the doctor's pleadings. The court noted that less severe sanctions were a more viable alternative. Options included: reasonable fines, the preclusion of a doctor from enforcing the requirement of written medical corroboration against him, and the award of fees to the plaintiffs for any expenses incurred with the doctor's non-compliance. The court also observed that the doctor had submitted an expert affidavit corroborating his defense that he was not negligent, and he raised a facially debatable defense regarding the statute of limitations.
To reach its conclusion, De La Torre relied on Kukral v. Mekras, 679 So.2d 278 (Fla.1996). There, the plaintiffs failed to conduct a proper presuit investigation and sent out a notice of intent to initiate litigation without any expert's affidavit. The supreme court held that the trial court's dismissal of the plaintiffs' complaint was too extreme a sanction. The supreme court explained that the purpose of the presuit requirements was to weed out frivolous claims and defenses, as well as promote presuit investigation and settlement of claims. While recognizing the importance of complying with the statute, the supreme court recognized that the competing consideration of litigants' right of access to the courts also must be preserved. See also Kozel v. Ostendorf, 629 So.2d 817, 818 (Fla.1993) ("[I]f a sanction less severe than dismissal with prejudice appears to *760 be a viable alternative, the trial court should employ such an alternative.").
Applying Estevez, De La Torre, and Kukral, we hold that the trial court did not abuse its discretion in failing to strike the defendant's pleadings. The trial court believed that the doctor's office staff did not make him aware of the presuit notices because they thought the insurance company was handling the matter. While the imposition of a less extreme sanction might have been appropriate, the McPhersons did not seek any sanction below other than the striking of the pleadings. They did not specify to the circuit court the prejudice they suffered as a result of the doctor's failure to comply with Chapter 766 presuit procedures.
In their motion for rehearing, the McPhersons argue that Cohen v. West Boca Medical Center, 854 So.2d 276 (Fla. 4th DCA 2003), where this court affirmed the trial court's decision to dismiss the plaintiff's claim for failing to comply with presuit discovery requirements, "cannot [be] distinguish [ed from] the instant case." Crucial to Cohen was that a plaintiff's eventual compliance with Chapter 766 occurred outside of the statute of limitations period; we quoted the supreme court's observation that a
failure to comply with the presuit requirements of the statute is not necessarily fatal to a plaintiff's claim so long as compliance is accomplished within the two year limitations period provided for filing suit.
Id. at 278 (quoting Kukral, 679 So.2d at 283). Involving a different scenario than the instant case, Cohen was a case where the operation of the statute of limitations circumscribed the trial court's discretion in dealing with a Chapter 766 noncompliance.

The Defendant's Closing Argument
The inadequacy of the record on appeal prevents us from concluding that the trial court may have erred in overruling the McPhersons' objection during closing argument to defense counsel mentioning the worker's compensation benefits they received. As the supreme court has noted, "[u]pon proper objection, the collateral source rule prohibits the introduction of any evidence of payments from collateral sources." Sheffield v. Superior Ins. Co., 800 So.2d 197, 200 (Fla.2001).
We cannot tell whether the trial court's ruling was in error based on this record. The McPhersons provided no portion of the trial transcript except for Dr. Phillips's closing argument. We do not know whether the evidence of worker's compensation payments went before the jury without objection or whether the plaintiffs otherwise opened the door to the argument. In response to the McPhersons' objection during his closing, defense counsel argued that the "testimony ... in the case [was that] all of these bills have been paid for." Also, we do not know from this record whether the McPhersons even presented a colorable case of negligence. With such an inadequate record, we cannot say that error occurred, much less reversible error.
The lack of a record similarly precludes reversal due to another inappropriate argument by defense counsel. It was improper for the defense to argue that the plaintiffs' lawyer would be "delighted" if the jury awarded ten percent of whatever was requested in their own closing argument. See Hartford Accident & Indem. Co. v. Ocha, 472 So.2d 1338, 1342 (Fla. 4th DCA 1985) (defense counsel wrongfully argued to the jury in closing argument that "any Plaintiff's attorney always asks for at least ten to fifteen times what they want...."); Donaldson v. Cenac, 675 So.2d 228, 229 n. 1 (Fla. 1st DCA 1996) *761 (defense counsel argument that it was "not uncommon for plaintiffs' attorneys to put up some ridiculous number 50 times what they really do expect to get" was improper).
We did not treat the comments in Ocha as fundamental error mandating reversal. Instead, we engaged in a harmless error analysis and concluded that comments similar to the ones in this case were not "so highly prejudicial as to require [the appellate court] to overturn the trial court's decision that a new trial was not mandated." 472 So.2d at 1343. Given the lack of a complete record, we cannot say that reversible error occurred in this case. See § 59.041, Fla. Stat. (2002) (providing that "[n]o judgment shall be set aside or reversed ... on the ground of misdirection of the jury... unless in the opinion of the court to which the application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice") (emphasis added).

The Motion To Tax Costs
We do not reach the issue raised concerning the timeliness of the motion to tax costs, since it does not appear from this record that the trial court has entered a final order taxing costs. However, we direct the parties' attention to Fisher v. John Carter & Associates, Inc., 864 So.2d 493, 494-96 (Fla. 4th DCA 2004), decided during the pendency of this appeal.
WARNER and HAZOURI, JJ., concur.
NOTES
[1] In Plemendon v. Fernandez, 602 So.2d 1379 (Fla. 4th DCA 1992), this court denied a writ of certiorari sought by a plaintiff when the trial court refused to strike a defendant's pleadings after, as here, the doctor failed to respond to the presuit notice. While the dissent contended that striking pleadings should be the presumptive rule for failure to respond, the majority apparently did not agree.